## Bates v. Taylor.

### (*Nashville.* February 16, 1889.)

1. Jurisdiction of Courts. *Over mandamus or injunction proceedings against the Governor. Constitutional law.*

The State Courts have not, under our Constitution, jurisdiction of proceedings by mandamus or injunction against the Governor of the State, designed to coerce or restrain him in the discharge, according to his own notions of the law, of his official duties touching the issuance to Congressmen elect of their certificates of election.

The departments of the State Government are independent of each other, and the Judiciary may not thus invade the province of the Executive.

Constitution construed: Art. II., §§ 1, 2.

Code construed: §§ 1094, 1146 (M. & V.); §§ 885, 935 (T. & S.). (See now Acts 1888-9, Ch. —.)

Cases cited and approved: Turnpike Co. v. Brown, 8 Bax., 490.

Bates *v.* Taylor.

Cited and distinguished: State *v.* Inspectors, 6 Lea, 21; 23 Mo., 353; 16 Wall., 203; 92 U. S., 531; 120 U. S., 391; 114 U. S., 314; 109 U. S., 453; 4 Wall., 499; 1 Cranch, 137; 1 Dutcher's N. J., 351–2.

2. SUPREME COURT. *Opinions as authority. Decision. Dictum.*

An opinion of this Court, determining a case upon two distinct and sufficient grounds, is to be treated, when cited as authority, as *decision* on both questions, not as *dictum* on either.

Case cited: Turnpike Co. *v.* Brown, 8 Bax., 490.

---

## FROM DAVIDSON.

---

Appeal from Chancery Court of Davidson County. ANDREW ALLISON, Ch.

VERTREES & VERTREES, HILL & GRANBERRY, and A. S. MARKS for Bates.

DEMOSS & MALONE, A. S. COLYAR, and S. WATSON for Taylor.

CALDWELL, J.　This is a bill to compel the Governor of the State to deliver a certificate of election to the complainant, and to prevent the issuance of one to another applicant.

Complainant alleges, in substance, that he was elected to membership in the Fifty-first Congress of the United States, in the Third Congressional District of Tennessee, on the sixth day of November, 1888; that the fact of his election was duly ascertained by the Governor and Secretary of State,

who by law constitute a Board to canvass the returns; that therefore, in further compliance with the law, a certificate showing the fact of his election was made out, signed by the Governor, attested by the Secretary of State, and sealed with the great seal of the State; that after all this the Governor refuses to deliver said certificate to the complainant, and now claims that one H. Clay Evans was elected to said office, and is entitled to receive a certificate of election instead of complainant; and that the Governor is about to issue a certificate to said Evans, though the latter was not elected, and the Secretary of State, will not join the Governor in such certificate.

Complainant further alleges that when the said Board acted, and the certificate reciting his election was signed, attested, and sealed the Board's power was exhausted, and complainant's rights became fixed, and his title to the office complete; that the Board could not subsequently reconsider its action and declare another person elected; that in no event had the Governor a right to reconsider the matter himself, and issue a certificate to Evans without the concurrence of the Secretary of State; that the issuance of a certificate to Evans would, in view of the foregoing facts, be a usurpation of authority on the part of the Governor, to the great and irreparable injury of complainant.

The prayer is that the Governor be enjoined from issuing a certificate to Evans, and that he

be compelled to deliver the one already signed, attested, and sealed to complainant.

The Governor appeared by counsel, and moved the Court to dismiss the bill—

"*First*—For want of equity on the face of the bill.

"*Second*—For want of jurisdiction in the Court.

"*Third*—Because it is unfit for a court of equity."

The Chancellor sustained the motion, and dismissed the bill.

Complainant has appealed.

The main question debated at the bar, and that which is conclusive of the case, is one of jurisdiction.

The Constitution ordains that the Governor of the State shall perform certain duties therein prescribed, and such others as may, from time to time, be devolved upon him by Act of the Legislature. Art. III.

Among the duties so devolved upon him by statute is that of issuing a commission or certificate of election to each person elected Representative to Congress. Code (M. & V.), §§ 1094 and 1146.

The issuance of such commission or certificate, whether called a ministerial or an executive duty, is an official action, whose performance can be neither coerced nor restrained by the Courts.

An attempt on the part of the Courts to control his action under this statute would be an in-

vasion by one department of the Government of. the rights of another department, and, for that reason, a violation of Sections 1 and 2 of Article II. of the Constitution, which are in the following language:

"Section 1. The powers of the Government shall be divided into three distinct departments—the legislative, executive, and judicial.

"Section 2. No person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted." Art. II.

It is well settled by all the authorities that *mandamus* will not lie to compel the Governor of a State to perform duties of a purely executive or political nature, involving the exercise of official judgment or discretion; but the decisions are wide apart as to the power of the Courts to compel him to discharge those duties which, as to other officials, are usually called ministerial.

The Courts of Ohio, Alabama, California, Maryland, and North Carolina are together in holding that the Governor may be required by *mandamus* to perform duties of the latter class; while the Courts of Arkansas, Georgia, Illinois, Louisiana, Maine, Minnesota, New Jersey, and Rhode Island have uniformally held the contrary, upon the ground that the powers of government in the States are distributed among three departments, which, under the organic law, are to be and re-

main independent of each other. High on Extraordinary Legal Remedies, Secs. 118, 119, 120, and 121.

This author cites the cases from the different States mentioned. We have examined them, and also a very instructive case from Michigan (*Sutherland v. The Governor*, 29 Mich. 321), which is in accord with those from the States last mentioned, and we are fully persuaded not only that the weight of authority, but also the weight of reason is against the power of the Courts to coerce the chief executive of a State into the performance of any official duty.

This Court has heretofore put itself in line with those Courts denying the existence of such power. *Turnpike Co.* v. *Brown*, 8 Baxter, 490.

In that case the turnpike company sought, by *mandamus*, to compel Governor Brown to issue certain bonds of the State, which it claimed the Legislature had directed to be issued by the Governor. The relief was refused upon two grounds: *First*, because the company had not shown itself entitled to the bonds; and, *secondly*, because the Court had no jurisdiction to control the action of the Governor with respect thereto.

In combating the idea that the Governor might be compelled to perform a ministerial duty, the Court, speaking through Judge McFarland, said:

*   *   *   "The Governor holds but one office—that is, the office of chief executive. Any duty which he performs under authority of law is

Bates *v.* Taylor.

an executive duty; otherwise we would have him acting in separate and distinct capacities. In some respects he would be the chief executive, an independent department of the Government; as to others he would be a mere ministerial officer, subject to the mandate of any Judge of the State; and we must assume also that the Judge would have the power to imprison the Governor if he refused to obey the order; for if the Court has this jurisdiction the power to enforce the judgment must follow." 8 Baxter, 493. The jurisdiction was denied upon the ground · that the Courts had no right to interfere with the Governor, who was the head of another department of the Government, in the discharge of a duty by law devolved upon him.

But it is now argued that so much of the opinion in that case as relates to the question of jurisdiction was *obiter dictum*, because the question decided in an earlier part of the opinion was conclusive of the case. This cannot be so. Both questions were fairly raised by the record, and the fact that the question of jurisdiction was discussed last does not make it any the less entitled to the force of an adjudication.

It is further contended that this Court disregarded and overruled that part of that decision by taking jurisdiction of a *mandamus* proceeding against Governor Marks in the later case of *The State, ex rel.* v. *Board of Inspectors*, 6 Lea, 21. The question of jurisdiction was expressly reserved

in that case, for the reason, as stated in the opin-
ion, that the Governor had in his answer declared
his willingness to submit to the direction of the
Court. Whether jurisdiction of the *person* in such
a case can properly be conferred in that way is
not material in this case. The question does not
arise here. It did arise there, and that the Court
exercised all the power of jurisdiction—whether
rightfully or wrongfully—can neither affect the
present case nor impair in any degree the author-
ity of the Brown case. Jurisdiction was taken
in Missouri (*Railroad* v. *The Governor,* 23 Mo.,
353) upon a similar expression from the Governor,
while in Michigan it was refused. 29 Mich., 322.

We have no hesitation in holding that the
Courts have no jurisdiction to compel the Gov-
ernor to deliver to complainant the certificate
claimed by him. No more have they the power
to restrain him from issuing a certificate to the
other applicant. If the Governor cannot be com-
pelled by *mandamus* to deliver a certificate of elec-
tion to one person, it follows that he cannot be
restrained by injunction from delivering it to an-
other person, for the nature of the act to be per-
formed by him is precisely the same in one case
as in the other, and the same considerations oper-
ate to defeat the jurisdiction of the Courts in both
instances.

But conceding, for the sake of argument, that
the Governor could not, *in the first instance,* have
been compelled to give the certificate to complain-

ant, or prevented from giving it to Evans, the very able and learned counsel of complainant go further, and insist, with great force and plausibility, that the chief executive of a State *may be* enjoined from doing an *unlawful* thing; that under the facts disclosed in the bill the act sought to be restrained is *unlawful*, and that, being *unlawful*, its performance may be prevented by injunction.

The essence of these facts is that the Governor and Secretary of State together reached the conclusion, from the returns, that complainant had been elected, and thereupon prepared, signed, attested, and sealed a certificate showing that fact, and that before the delivery of that certificate the Governor changed his mind, decided that Evans was elected, and, without the concurrence of the Secretary of State, was about to issue a certificate to Evans when this bill was filed.

The statute devolving upon the Governor the duty of issuing a commission or certificate of election necessarily confers upon him the right of determining when and how that duty, within the law, must be performed; and when he comes to do the thing required he must be allowed to do it according to his own judgment as to the meaning of the law, and on his own sense of official responsibility under his oath. In other words, it is his province to construe the statute for himself, and to determine for himself when he has complied with all of its requirements, and when there yet remains something for him to do—whether he

may act alone under a given state of facts, or must act in conjunction with another; and so long as he acts in good faith and with an honest purpose of discharging his duty under the law his action cannot appropriately be characterized as *unlawful.* In such case the Courts have no power to substitute their construction or judgment for his, and tell him when to stop or when to go on.

If they have such authority as to one statute imposing an obligation upon him, they have it as to all such statutes, and with respect to all requirements made of him by the Constitution as well. Such a view would put the responsibility of the Governor's office upon the judiciary, and virtually make him subject to the direction of the Courts in every action he might take, thereby making a substantial destruction of one department of the State Government, and a usurpation of its functions by another, contrary to the genius, spirit, and letter of the Constitution.

If the Governor act corruptly he is amenable to the Legislature; and if, in an honest endeavor to discharge his duty, he mistake the law, and prejudice individual rights, the injured person may, in proper cases, restrain the one benefited from using his advantage.

Let us illustrate the connection, and at the same time the independence, of the three departments of the Government: The Legislature should never pass nor the Governor approve an unconstitutional law. Yet, because the duty of enacting laws rests

upon the one, and that of approving or disapproving them upon the other, the Courts cannot restrain the former from passing nor the latter from approving a statute obviously unconstitutional. While acting in their own appropriate spheres the Legislature and the Governor must be allowed to judge of the constitutionality of the law for themselves. After they have acted the judiciary may act, and, at the suit of some interested party, annul the law because violative of the Constitution. Thus the integrity and independence of each department are preserved, conflict between them is prevented, and the injurious operation of an unconstitutional law is averted.

We do not think the decisions of the Supreme Court of the United States stand in the way of the conclusion we have reached, though the Federal Courts have, in several instances, taken jurisdiction of proceedings against the Governors of certain States, and put them under restraint by injunction.

In *Davis* v. *Gray*, 16 Wallace, 203, Governor Davis, of Texas, was enjoined from wrongfully issuing patents to land which had previously been granted to other persons. The Governor of Louisiana was restrained from issuing bonds under an unconstitutional act, in the case of *Board of Liquidation* v. *McComb*, 92 U. S., 531. In another case the Governor of Missouri, and others acting with him, were, by injunction, prevented or restrained for a time from selling certain property

to enforce statutory mortgage liens claimed by the
State, the claim by the adverse party being that
the liens had been satisfied. *Ralston* v. *Missouri
Fund Commissioners*, 120 U. S., 391.

The Davis case was cited approvingly in *Allen*
v. *Railroad*, 114 U. S., 314, and *in re Ayres*, 123
U. S., 506, while it was questioned and limited in
*Cunningham* v. *Macon & Brunswick Railroad Com-
pany*, 109 U. S., 453.

Now, the most that can be said of these cases
is that they show the jurisdiction of the *Federal
Courts* to restrain the Governor of a State from
doing a wrongful act to the injury of individual
rights. It is not even intimated in any one of
them that the *State Courts* have any such jurisdic-
tion. There is a wide difference between the rela-
tion of the *Federal judiciary* and the *State judici-
ary* to the Governor of the State, and, because of
that difference the Federal decisions referred to are
not at all in point in this case. A State's judi-
ciary sustains the same relation to its Governor
that the Federal judiciary does to the President of
the United States; and as a State Court, by rea-
son of that relation, has no jurisdiction to coerce
or restrain the Governor with respect to his official
duties, so the Federal Courts, for the same reason,
have no power to interfere with the official actions
of the President. It was so held in the case of
the *State of Mississippi* v. *Johnson*, 4 Wallace, 499.
In that case the State of Mississippi, as party
complainant, sought, by injunction, to restrain Pres-

ident Johnson from the execution of the Recon-
struction Acts of Congress, upon the allegation
that they were unconstitutional. The Court held
that it had no jurisdiction either to compel the
President to execute constitutional laws or to re-
strain his action under unconstitutional legislation.

The reasoning of the Court is embraced in the
following quotation from the opinion of Chief
Justice Chase, who spoke for the whole Court:

"It will hardly be contended that Congress (*the
Courts*) can interpose, in any case, to restrain the
enactment of an unconstitutional law; and yet how
can the right of Judicial interposition to prevent
such an enactment, when the purpose is evident
and the execution of that purpose certain, be dis-
tinguished in principle from the right to such in-
terposition against the execution of such a law by
the President? The Congress is the legislative de-
partment of the Government; the President is the
executive department. Neither can be restrained in
its action by the judicial department, though the
acts of both, when performed, are in proper cases
subject to its cognizance. The impropriety of such
interference will be clearly seen upon consideration
of its possible consequences.

"Suppose the bill filed and the injunction prayed
for allowed. If the President refuse obedience it
is needless to say that the Court is without power
to enforce its process. If, on the other hand, the
President complies with the order of the Court,
and refuses to execute the Acts of Congress, is it

not clear that a collision may occur between the executive and legislative departments of the Government? May not the House of Representatives impeach the President for such refusal? And in that case could this Court interfere in behalf of the President thus endangered by compliance with its mandate, and restrain, by injunction, the Senate of the United States from sitting as a court of impeachment? Would the strange spectacle be offered to the public world of an attempt by this Court to arrest proceedings in that Court? These questions answer themselves." 4 Wallace, 500 and 501.

The case of *Marberry* v. *Madison*, 1 Cranch, 137, is not in conflict, and could not be, for the President was not a party.

It may be of some interest, and not inappropriate at this point, to note the fact that an unseemly conflict was narrowly escaped in that case, though the proceeding was not against the President himself, but only against a member of his Cabinet.

Chief Justice Green, of New Jersey, says:

"We have Mr. Jefferson's authority for saying that if the Supreme Court had granted a *mandamus* in the case of *Marberry* v. *Madison* he should have regarded it as trenching on his appropriate sphere of duty; that he had instructed Mr. Madison not to deliver the commission, and that he was prepared, as President of the United States, to maintain his own construction of the

Bates *v.* Taylor.

Constitution with all the powers of the Government against any control that might be attempted by the judiciary in effecting what he regarded as the rightful powers of the executive and Senate within their peculiar departments." *The State* v. *The Governor*, 1 Dutcher's N. J. R., 351-2, citing Jefferson's Works, Vol. IV., pp. 75, 317, 372.

The question of jurisdiction being conclusive, it has not been deemed important to decide whether, under the peculiar language of the statute, the *delivery* of the certificate made out for the complainant was necessary to invest him with a title to the office, nor whether, after the signing, attesting, and sealing of that certificate, the Governor could rightfully reconsider his action, and, without the concurrence of the Secretary of State, issue to Evans a certificate. But if the law be, as claimed in the bill and in the argument, that what was done with respect to the first certificate gave complainant a complete title and exhausted the power of the Governor, and that he could properly act only in conjunction with the Secretary of State, then, of course, a subsequent certificate by the Governor to Evans would neither confer title upon him nor impair the title of complainant, and there would be no sufficient reason for seeking the aid of a court of equity.

Let the decree be affirmed and the bill dismissed at the cost of complainant.