## ARGUED AND DETERMINED

### IN THE

# SUPREME JUDICIAL COURT

### OF

# MASSACHUSETTS.

---

ALBERT LITTLEFIELD vs. FITCHBURG RAILROAD COMPANY.

Suffolk.   November 16, 17, 1892. — January 5, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Transportation of Milk — Penal Statute — Petition to and Order of Board of Railroad Commissioners — Irregularity of Proceedings fatal to Action.*

The authority of the Board of Railroad Commissioners, under the Pub. Sts. c. 112, §§ 192, 193, 194, is not to consider the general subject of rates, but to "ascertain at what rates facilities for the carriage of milk under contract or in large quantities are furnished by the railroad corporation," and to compare them with the tariff for the carriage of milk by the can, to fix rates by the can "fairly proportionate with such contract or large quantity rates." The order when made is to have the force and effect of a criminal statute, which calls for strictness and regularity in proceedings under it.

In the record of hearings before the Board of Railroad Commissioners on a petition asking for the revision and fixing of tariff rates for the forwarding of milk over a railroad, there was nothing to indicate that the railroad had notice of the petition, or an opportunity of being heard before the board. In an action against the railroad to recover a penalty under the Pub. Sts. c. 112, § 194, for non-compliance with the order of the board, there was no allegation in the declaration to show that the defendant had such notice or opportunity to be heard. *Held*, on demurrer, that, while from what occurred at the argument the court might suppose that the defendant was before the commissioners, yet it could not go outside of the record before it, and that the order was invalid for want of a notice to the defendant.

In a petition to the Board of Railroad Commissioners for the revision and fixing of

tariff rates for the forwarding of milk over a railroad, there was nothing to show to what railroad the petition referred, or in what part of the State, or in what direction the petitioners desired to forward milk, or, except by inference, that they desired to forward it anywhere. The petitioners described themselves as producers of and dealers in milk, but besides that there was nothing to show what interest they had in the subject to which the petition related. The order of the board recited that the petition was signed by residents of seven towns mentioned, but did not state to what railroad it related, although there was language from which it might be inferred that a former proceeding of a similar character against the same defendant was intended to apply. The order did not expressly state to what place the milk was to be carried at the rate fixed, although Boston was apparently meant; and the only designation of the places from which milk was to be carried was "the stations covered by the present petitions," which was supposed to mean the stations in the towns where, according to the recital in the order, the petitioners resided. From some of these towns another railroad ran to Boston, and it was not stated whether the order was to apply to transportation over that railroad or not. *Held*, that the proceedings were not sufficiently regular and formal, and the order was not sufficiently explicit, to be made a foundation for the recovery of the penalties prescribed by the Pub. Sts. c. 112, § 194.

APPEAL from a decision sustaining the defendant's demurrer to the plaintiff's declaration. The declaration was as follows:

"And the plaintiff says that at the times hereinafter mentioned, and for many years prior thereto, the defendant was a railroad corporation and a common carrier of goods, wares, and merchandise for hire, duly established under the laws of the Commonwealth, and owned, managed, and operated a railroad extending from and between Littleton, Acton, West Acton, South Acton, Boxboro', Rockbottom, and Stowe, to said city of Boston, all of said cities and towns being in said Commonwealth and on the line of said railroad; that as such railroad corporation and common carrier the defendant was bound to receive, carry, forward, and deliver milk on its said railroad for any person tendering the same; that during the time, and on the several dates hereinafter mentioned, and for a long time prior thereto, the defendant did receive, carry, forward, and deliver milk by contract, by the can and in larger quantities, on its said railroad to said Boston, at certain fixed rates, being the same rates of the various times herein mentioned established by said defendant corporation; that the defendant corporation was also bound by law to receive, forward, and deliver milk by the can when duly tendered for transportation, at such tariff rates as the Board of Railroad Commissioners of Massachusetts might revise,

fix, and determine according to law, and of which it should be duly notified by said board; that on or about the twenty-sixth day of May, A. D. 1891, on the petition of the plaintiff and others desiring to forward milk over said railroad, and by virtue of the power and authority vested in it by law, said Board of Railroad Commissioners of Massachusetts ascertained at what rates facilities for the carriage of milk under contract or in large quantities were furnished by the defendant corporation, compared the same with the tariff established by the defendant as aforesaid for the carriage of milk by the can from and to the same places on said railroad, including a reasonable compensation for the care of the same, and found that the said tariff for care and carriage by the can was unreasonably more than the said rate for its carriage under contract or in larger quantities, and thereupon revised said tariff for care and carriage by the can, and fixed the rates therefor fairly proportionate with such contract or large quantity rates, mamely, from Littleton, Acton, West Acton, South Acton, Box-boro', Rockbottom, and Stowe to said Boston, at the sum of three cents per can; that on or about the twenty-ninth day of May, 1891, the defendant was duly notified of said tariff rates, thus revised and fixed by the said Board of Railroad Commissioners according to law; that subsequently, and while said tariff rates thus revised and fixed by said board were in force, namely, from the first to the ninth of October, inclusive, 1891, at the railroad station or depot of the defendant corporation at said West Acton, the plaintiff tendered to the defendant for transportation from said West Acton to the said city of Boston a certain quantity of milk by the can, contained in and making in all four hundred and forty-one cans of milk; that upon tendering said cans of milk, the plaintiff at the same time also tendered to the defendant for the transportation of the same the said tariff rates therefor, revised and fixed by said Board of Railroad Commissioners as aforesaid, namely, three cents per can; that thereupon the defendant refused and neglected to receive, forward, or deliver said cans of milk as requested, at the said tariff rates so fixed and notified to it by said board and tendered as aforesaid, to the great damage and injury of the plaintiff, whereby the defendant, by virtue of the statutes in such case made and provided, forfeited and became liable to pay to the plaintiff ten dollars for

each of said cans, amounting in all to the sum of four thousand four hundred and ten dollars."

According to the report of the Board of Railroad Commissioners, four hearings were held in 1891, the petition being as follows: "We, the undersigned, producers of and dealers in milk in Massachusetts, respectfully represent that the freight for the carrying of milk in cans charged by the railroads is exorbitant and unjust, so ask that the same be reduced to a reasonable amount." The petition, which was signed by residents of the seven towns named in the declaration, recited the manner in which the milk business was carried on in those towns, and declared that the complaint came from the farmers, who desired to freight their milk to the city on their own account.

The first cause of complaint was that the existing system was in itself objectionable. The report recited the action of the board in 1873 on the petition of the Milk Producers Association, and also quoted liberally from its findings upon the complaint of certain farmers in Worcester County in 1878. The report further recited that it was in consequence of the decision of the board in 1878 that the act was passed, now found in the Pub. Sts. c. 112, §§ 192, 193, 194; that in 1881 the position was reaffirmed that farmers have the right to transportation, with reasonable facilities, without the intervention of any contractor or middleman, and that the principles thus asserted led to the adoption of the present system, under which the farmer can buy milk tickets from the railroad company, and look to it for the safe transportation and proper handling of his milk. The report further stated: "In the words of the finding of the board in the case of *J. W. Adams and others* v. *Fitchburg Railroad*, under date of July 26, 1882, it is the right of the producers to have their milk carried by the railroad company at a fixed rate, to be paid directly to it. This right the producers now enjoy. The companies must, however, bear in mind that the agents whom they select to care for the milk thus consigned to them are agents whose interests are, in some respects, adverse to the interest of the consignors. The contractor wishes to have farmers sell milk to him rather than to freight it to the city and sell it there to his competitors. So

long, therefore, as the present system continues, the acts of the agents of the railroad companies will be open to suspicion, and it is natural that there should be frequent complaints."

The second cause of complaint was that the rates charged for the transportation of single cans were exorbitant as compared with the rates charged for the transportation of milk in large quantities. The report recited that, "On the complaint of *J. W. Adams and others* v. *Fitchburg Railroad,* this board in 1882 fixed the rate from Littleton and stations in Acton, at five cents per can, to be paid in advance by the purchase of tickets"; that it was now asked to reduce the tariff so fixed; that, in rendering the decision in the above case, the board held that it had no power to require a railroad company to ice milk, and that it now reversed its decision, holding that "reasonable care," in the Pub. Sts. c. 112, § 192, included the warming of the car in winter and its artificial cooling in summer. The report concluded as follows: "To fix the price per can at three cents would make the rate per single can twenty-three per cent higher than the rate per can when taken in car-load lots, and this, in the opinion of the board, would be a fairly proportionate rate, considering the character of the business. . . . The board therefore fixes the rate per can from the stations covered by the present petitions at three cents, which rate is to include carriage, care as defined above, and the return of the cans."

The defendant demurred to the plaintiff's declaration, on the ground that the order of the board was illegal and void; "because the board, upon a general petition applicable to all places in the Commonwealth from which milk is transported, made a decision applicable to certain specified towns only; because the price fixed by the board included the icing of the milk and the return of the cans, and the board had no authority to fix the price for such service; because no price was fixed by the board for the carriage of milk exclusive of other service; because the board ordered the defendant to furnish ice, which it had no authority to do; because it does not appear that any notice was given to the defendant, or that any person was present in behalf of the defendant at the hearing; because no time was fixed in the decision at which said rates shall take effect, nor was it stated how long they should continue; because it was not stated

in said order to what stations the milk was to be transported at said rates; and because in said order no reference was made to the defendant, and the order did not purport to apply to the defendant."

The Superior Court sustained the demurrer; and the plaintiff appealed to this court.

*J. A. McGeough,* for the plaintiff.

*G. A. Torrey,* for the defendant.

KNOWLTON, J.    The provisions of the Pub. Sts. c. 112, § 192, are intended to secure to every person desiring to transport milk in small quantities by the can on a railroad the right to have it carried by the can "under fairly proportionate advantages in every respect, including price, time, and reasonable care for the same, as the milk carried in large quantities, or under contract." Section 193 authorizes the railroad commissioners, under certain circumstances, to revise the tariff, and § 194 imposes a penalty of ten dollars for each and every can of milk which the railroad company refuses to receive or neglects to forward or deliver at the rates established by the railroad commissioners.

The plaintiff in the present case seeks to recover $4,410, the amount of the penalties incurred by the defendant in eight days for refusing to transport for him four hundred and forty-one cans of milk, on which the freight at the tariff rate would have been about thirteen dollars. The statute is highly penal, and it calls for strictness and regularity in proceedings under it. Some of the questions arising in this case we do not deem it necessary to consider; for if we assume, without deciding, that the railroad commissioners were correct in their general view of the law, we are of opinion that the plaintiff is not entitled to the penalties which he seeks to recover. Under the Pub. Sts. c. 112, § 193, the railroad commissioners exercise a peculiar jurisdiction. They may make an order which will subject the railroad corporation to heavy penalties. This jurisdiction attaches only "on the petition of a person desiring to forward milk over a railroad." The proceeding is directed against a particular railroad on a petition of a person who claims a particular right against that railroad. The authority of the board is not to consider the general subject of rates, but to "ascertain at what rates facilities for the carriage

of milk under contract or in large quantities are furnished by the railroad corporation," and to compare them with the tariff for the carriage of milk by the can, to fix rates by the can "fairly proportionate with such contract or large quantity rates." The order, when made, is to have the force and effect of a criminal statute. The inquiry relates to the dealings of a particular railroad; for the special contracts of one railroad with shippers presumably are not the same as those of another railroad.

In a hearing of this kind common justice requires that a railroad against whom the proceeding is directed should be notified of the petition, and have an opportunity of being heard. In the present record there is nothing to indicate that the defendant had notice of the petition, or an opportunity of being heard before the railroad commissioners. If it was notified, the failure of the order of the railroad commissioners to show it might be cured by an allegation in the declaration; but there is no such allegation. Perhaps the full record of the railroad commissioners may show notice and a hearing of the defendant; but if it does, it is not before us. From what occurred at the argument, we may suppose that the defendant was before the commissioners; but on a demurrer we cannot go outside of the record before us. So far as appears, the order was invalid for want of a notice to the defendant.

The petition is not in a form to show that the commissioners had jurisdiction. There is nothing in it to show to what railroad it refers, or in what part of the State, or in what direction the petitioners desired to forward milk, or, except by inference, that they desired to forward it anywhere. The petitioners describe themselves as producers of and dealers in milk; but besides that there is nothing to show what interest they have in the subject to which the petition relates. The order recites that the petition was signed by residents of seven towns, which are mentioned. Apparently this fact was ascertained from evidence outside of anything contained in the papers before the commissioners. The order does not anywhere expressly state to what railroad it relates. In it there is a reference to a former proceeding of a similar character before the railroad commissioners in 1882 against this defendant, and there is language

from which it may be inferred that this order is intended to apply to the defendant. It is not expressly stated in the order to what place the milk is to be carried at the rate fixed, although from the general discussion and statement of reasons in the order, we suppose that Boston is meant; and the only designation of the places from which the milk is to be carried is " the stations covered by the present petitions," which doubtless means the stations in the towns where, according to the recital in the order, the petitioners reside. From some of these towns another railroad runs to Boston, and it is not stated whether the order is to apply to transportation over that railroad or not. The whole proceedings are more appropriate to a case arising under the general jurisdiction of the railroad commissioners, where their action is advisory, than to this peculiar jurisdiction, where an order may be made which will have the effect of a highly penal statute.

So far as we can judge from the record before us, the proceedings were not sufficiently regular and formal, and the order was not sufficiently explicit to be made a foundation for a recovery of the penalties prescribed by the statute.

*Judgment for the defendant.*