THE STATE OF FLORIDA BY JOHN L. MORGAN, JEFFERSON B. BROWNE, AND R. HUDSON BURR, RAILROAD COMMISSIONERS OF THE STATE OF FLORIDA, PLAINTIFFS IN ERROR, v. THE LOUISVILLE AND NASHVILLE RAILROAD COMPANY, A CORPORATION UNDER THE LAWS OF THE STATE OF KENTUCKY, DEFENDANT IN ERROR.

1. The Railroad Commissioners of the State of Florida acting under the authority conferred upon them by section 16, Article 30 of the Constitution of Florida, by the amendment of the 35th section of Article 3 thereof, adopted in 1898, and by Chapter 4700 of the laws of 1899, have no power to require a railroad company to transport freight from a point on its own line within the State, to a destination within the State on the line of a connecting road, when it does not appear that the former road holds itself out to the public to perform such service; nor have the Railroad Commissioners power or authority to impose penalties upon a railroad which refuses compliance with such an order.

2. The rule that a demurrer to a replication to a plea, which replication confesses and undertakes to avoid the plea, reaches back to the declaration, applied in this case.

This case was decided by Division B.

Writ of Error to the Circuit Court for Gadsden County.

The facts in the case are stated in the opinion of the Court.

*J. Emmett Wolfe* and *Barrs & Odom,* for Plaintiffs in Error.

*Blount & Blount,* for Defendant in Error.

HOCKER, J.   On the 26th of December, 1902, the State of Florida by the Railroad Commissioners of the State of Florida, filed a suit at law in the Circuit Court of Gadsden county for the recovery of penalties imposed by the Commissioners, acting as is alleged under the authority given them in Section 16 Art. 30, the amendment of the thirty-fifth section of Article 5, of the Constitution of Florida adopted in 1898, and   by Chapter 4700   of the Laws of 1899.   The   declaration contains nine  counts, each for separate and distinct penalties, but it will not be necessary to set forth more than one of said counts, as the principles of law involved are applicable to each one of them.   The first count is in the following words:

"The State of Florida, by John L. Morgan, John M. Bryan and R. Hudson Burr, Railroad Commissioners of said State, through William B. Lamar as Attorney General of said State, J. M. Barrs, J. Emmett Wolfe and John L. Neeley, special counsel employed by said Railroad Commissioners and Attorney General, in this first count of its declaration, sues the Louisville and Nashville Railroad Company, a corporation under the laws of the State of Kentucky, for that, prior to the institution of this suit, the said defendant being a railroad company and a common carrier of freight operating a line of railway for the transportation of freight from points in Florida to points in Florida,  and running and  doing

business in Gadsden county, Florida, was charged before the said Railroad Commissioners with having by its officers, agents and employees, being guilty of a violation of the provisions of Chapter 4700 of the laws of Florida, and Rule 3 of the rules governing the transportation of freight by common carriers in Florida, duly adopted by the Railroad Commissioners of the State of Florida, and in effect at the time of said violation, which said rule provided that no railroad company shall decline or refuse to act as a common carrier to transport any article proper for transportation in this, that, as alleged in said charge the said defendant on, to-wit: October 28th, 1902, did decline and refuse to act as a common carrier to transport from Cottondale, Florida, to Tallahassee, Florida, one car load of cotton seed, proper for transportation, offered to said defendant at Cottondale, Florida, by one Columbus Welch, for transportation to Tallahassee, Florida, a copy of which said rule is hereto attached, marked 'Exhibit A' and made a part thereof; and after ten days notice to said defendant of the charge of said violation and disregard of said law and rule, upon which charge said defendant had an opportunity to be heard by said commissioners, said Commissioners on November 24th, 1902, having in accordance with law duly tried the said defendant on said charge, duly adjudged the said defendant guilty of the violation of said law and said rule as charged, and, in accordance with law duly fixed and imposed a penalty for said offence in the sum of one thousand dollars, a copy of which said judgment and order is hereto attached, marked 'Exhibit B,' and made a part hereof; by reason of which above alleged premises the said defendant became and was liable to pay promptly to the State Treasurer of the State of Florida the said sum of one thousand dollars with interest thereon from Novem-

ber 24th, 1902; and the said defendant, notwithstanding said judgment and order, has neglected and refused and still neglects and refuses to pay said sum of one thousand dollars, or any part thereof."

The following rule of the Railroad Commission is attached to the declaration as "Exhibit A:" "No railroad company shall decline or refuse to act as. a common carrier to transport any article proper for transportation."

Exhibit "B" attached to the declaration is the order of the Railroad Commissioners, which is the basis of the first count of the first count of the declaration. Other similar orders of the Railroad Commissioners are attached to the declaration as exhibits, and are the bases of the other counts.

A demurrer to each count of this declaration was interposed by the defendant, the first ground of which is: "That the count charges only that the defendant did decline and refuse to act as a common carrier to transport from a point west of the Chattahoochee River to Tallahassee, a carload of merchandise offered to it for transportation, yet does not allege that the defendant was a common carrier operating a line of railroad between the said two points.

In other grounds of the demurrer the constitutional authority of the Legislature to confer upon the Railroad Commissioners the powers which they attempt to exercise in these cases, and especially the power to impose penalties without a trial by jury, is questioned.

The demurrer to the declaration was overruled, and the defendant filed four similar pleas to each count thereof. The first of said pleas is in these words: "That the defendant did not, at the time of the alleged declination and refusal to act as a common carrier to transport from Cot-

tondale, Florida, to Tallahassee, Florida, one carload of cotton seed, own, control or operate any line of railrad from Cottondale to Tallahassee, aforesaid, but that the only line of railroad owned, controlled and operated by it running from Cottondale towards Tallahassee, extended no further towards said city than a point distant about forty miles therefrom."

All the pleas of the defendant were demurred to by the plaintiff, and the demurrers were overruled by the Circuit Judge. The plaintiffs then filed replications to the several pleas; the first replication to the first plea being as follows: "The plaintiff for replication to the defendant's first plea to the first count of the declaration says that while it is true the defendant did then and there only operate a line of railroad from Cottondale, Florida, to River Junction, Florida, it is also true that the defendant was then and there engaged and in duty bound to carry on a general transportation business, including the transportation of cotton seed from Cottondale, Florida, over its said railroad to River Junction, Florida, and thence through the medium of the Seaboard Air Line Railway, a regular connection of its railroad, over the Seaboard Air Line Railway to Tallahassee, Florida; and that at said River Junction the said line of defendant's railroad connects with a certain other line of railroad which was then operated by the Seaboard Air Line Railway Company from said point to Tallahassee, Florida, so that cars could be and were run and car loads of cotton seed could be and were transported from Cottondale, Florida, to Tallahassee, Florida, over said connecting lines of railroad, and said Seaboard Air Line Railway was able, ready and willing to complete the transportation of said cars of cotton seed from River

Junction to Tallahassee, if the same had been delivered. to it by the defendant."

These replications were demurred to by the defendant, the objections to the first replication being in substance that it was a departure from the first count, and presented no facts showing why the first plea should not prevail. The court sustained the demurrer to each of the replications, and the plaintiff announcing that no further pleadings would be filed, a final judgment for the defendant was entered, to which a writ of error was sued out from this court

The view which we take of this case renders it unnecessary to give a further statement of the pleadings.

The amendment to section 35, Article V of the constitttution proposed in 1897 and adopted in 1898 reads as follows: "No courts other than herein specified shall be established in this State *except that the* Legislature may c'othe *any railroad commission* with judicial powers in all matters connected with the functions of their office." The "railroad commission" referred to had reference to the offices of Railroad Commissioners then and now existing under the statute laws of the State. After the adoption of the amendment the Legislature passed Chapter 4700, laws of 1899. The Railroad Commissioners rely upon this act for the authority and powers they have attempted to exercise in the orders made by them, which are the foundation of this suit.

Section 6 of Chapter 4700 Laws of 1899, gives the following powers, among others, to the Railroad Commissioners, *viz*: "to make reasonable and just joint rates for all connecting railroads doing business in this State as to all traffic or business passing from one of said railroads to another." "Said commissioners shall have full

power and authority to require any railroad, railroad company or common carrier to properly operate its railroad or transportation line and to furnish all the necessary facilities for the convenient and prompt handling transportation and delivery of all freights offered along its line for transportation, and shall provide and prescribe all such rules and regulations as may be necessary to secure such operation and the furnishing of such facilities, and the prompt handling transportation and delivery of all freights offered, and shall have full power and authority to regulate, require and provide for prompt delivery and transfer by any such company or common carrier within this State of any and all freights consigned or offered for transportation from any point in Florida to any point in Florida whenever such transfer and delivery will afford a shorter or otherwise more available route of transportation than can be given by the company or common carrier first receiving the freight, and shall provide and prescribe and enforce observance of all such rules and regulations as to such prompt delivery and transfer as they may deem necessary."

Section 12 of the said act is as follows: "If any railroad, railroad company or other common carrier doing business in this State, shall by any officer, agent or employe be guilty of a violation or disregard of any rate, schedule, rule or regulation, provided or prescribed by said Commission, or shall fail to make any report required to be made under the provisions of this act, or shall otherwise violate any provision of this act, such company or common carrier shall thereby incur a penalty for each such offense of not more than five thousand dollars, to be fixed and imposed by said Commissioners after not less than ten days' notice of the charge of such viola-

22 S. C.

tion or disregard of rate, schedule, rule or regulation, or failure to make report or other violation of the provisions of this act, and upon which charge such company or common carrier shall have had an opportunity to be heard by said Commissioners, which fine or penalty, in the amount so fixed and imposed, if not promptly paid to the State Treasurer, shall be recovered, with interest thereon, by an action brought by said Commissioners in the name of the State of Florida, in any county in the State where such action or violation has occurred, or in any other county in the State through or in which such company or common carrier runs or does business. The fact of the fixing and imposing of such fine by the Commissioners shall constitute prima facie evidence of everything necessary to create the liability or require the payment of the fine or penalty as fixed and imposed, and to authorize a recovery thereon in any action or proceeding brought by the Commissioners, and a copy of the entry in the minute book of the Commissioners of the order fixing and imposing such fine or penalty, certified by the Chairman of the Board of Railroad Commissioners, shall constitute prima facie evidence of the fact that such fine or penalty was fixed and imposed by the Commission. The Commissioners shall institute such action through the Attorney General or State Attorney, who shall not require other fees than those they now receive by law, or by special counsel employed by the Commissioners, and Attorney-General as provided in section 7 of this act, the fees of which special counsel shall be fixed and allowed by the Commissioners and the Attorney-General as may seem to them reasonable and just; and any and all expenses of litigation and proceedings under the provisions of this act may be by the Commissioners allowed and paid, and in the event of recovery of any such fine or pen-

alty, may be paid out of any moneys recovered under the provisions hereof, and the balance of any moneys so recovered shall be, by the State Treasurer, put to the credit of the Railroad Commission, to meet any of the expenses of said Commission and the cost of carrying out and enforcing the provisions of this act. The Commissioners shall have the right to suspend, reduce or remit any fine or penalty so imposed, and may suspend, reduce or remit the same on such terms or conditions as may be fixed by them."

Section 15 of said act is as follows: "That all railroads, railroad companies and other common carriers in this State shall, upon demand, issue duplicate freight receipts to all shippers of freight in which shall be stated the class or classes of freight shipped, freight charges over the railroad issuing such receipts and as far as practicable shall state the charges upon the same over the connecting roads transporting such freight, and in all cases the railroads receiving such freight shipped shall be held in all the courts of this State as responsible for the prompt and safe delivery of same to its point of destination within a reasonable time required for its transportation, which reasonable length of time shall be determined after due investigation by said Railroad Commissioners. When the consignee of such freight presents the railroad receipt to the agent of the railroad last transporting said freight, such agent shall deliver the articles shipped upon the payment of the rates charged for the class of freight as stipulated in said railroad receipt. If any railroad company shall violate this section of this act, it shall incur a penalty to be determined as provided for in Section 12, of this act."

Section 22 of said act is as follows: "The said Railroad Commissioners are hereby vested with judicial pow-

ers to do or enforce or perform any function, duty or power conferred upon them by this act to the exercise of which judicial power is necessary."

These seem to be the only provisions of Chapter 4700, Laws of 1899, which have a bearing on the questions presented by this record.

It will not be contended that the Railroad Commissioners have any powers except such as conferred upon them by the law. Our duty then is to discover what is the power which the Railroad Commissioners have exercised in this case. That is found in the language of their order set up in the declaration, taken in connection with the admitted fact that the defendant railroad does not own or operate a line of railway to Tallahassee, but simply connects with the Seaboard Air Line Railway at River Junction, about forty miles west of Tallahassee, which city is on the latter line.

The declaration shows that the penalties sought to be recovered were imposed because the defendant company "refused and declined to act as a common carrier to transport cotton" from points on its line in Jackson county to Tallahassee. We have not been able to discover in the act (Chapter 4700) any attempt to confer upon the Railroad Commissioners any power to compel one railroad to transport freight over the line of another railroad which the former does not own, control or operate. Independent of statute law this could not be done, (Lotspeich & Ponder v. Central R. R. & Banking Co., 73 Ala. 306; People v. Chicago & Alton Railroad Co., 55 Ill. 95, S. C. 8 Am. Rep. 631, text 636; Pittsburg, Cincinnati & St. Louis R. W. Co., v. Morton, 61 Ind. 539, S. C. 28 Am. Rep. 682) and we are not prepared to say nor is it necessary to say in this case, whether the legislature can constitutionally exercise such a power. We are not now

dealing with questions involving the powers of the Railroad Commission in enforcing *joint* traffic or joint rates, or the duty of railroad companies to furnish facilities for transportating freight over their own and connecting lines. We will simply say that the provisions of the law seem to be ample as to these powers. Neither are we dealing with the question of the duty which is imposed on a railroad which holds itself out to the world as engaged in transporting freight over another line, for no such question is presented by the record. Chicago, St. Louis & Pittsburg Railroad Co. v. Wolcott, 141 Ind. 267, 39 N. E. Rep. 451, S. C. 50 Am. St. Rep. 320, text 329, 330, and notes. It seems to be contended that section 15 of the act confers the power which is here attempted to be exercised. We have given that section a careful investigation. We think it is to be construed in connection with the other provisions of the act giving to the Commissioners authority "to make reasonable and just joint rates for all connecting railroads doing business in the State, as to all traffic or business passing from one of said railroads to another, and to require the establishment of such freight and passenger depots as the condition the road, safety and convenience of passengers and the prompt delivery of freight and the most convenient *transfer* of passengers and *freight* may justify." We find nowhere in the act any authority given the Commissioners to compel one road to transport freight over the line of another. The power to regulate *joint traffic rates* does not carry with it the power to authorize or require one road to take possession, even temporarily of the track of another for purposes of transportation. The shippers' rights under section 15 are to be construed with reference to the powers conferred upon the railroad commissioners

to regulate joint traffic on connecting lines. So under-
stood, we think this section (15) harmonizes with other
portions of the act and cannot be said to invade any of
the constitutional rights of either of two or more con-
necting roads. In view of the penalties created by the
act we think the foregoing is the proper and reasonable
construction of the section. Mayo v. Western Union Tel.
Co., 112 N. C. 343, text 347, 16 S. E. Rep. 1006. It is
claimed, however, that the replications show that the
Seaboard Air Line Railway was a connection of the de-
fendant railway at River Junction and that cars of
freight could be transported from Cottondale and other
points in Jackson county to Tallahassee over the two
lines of railway to Tallahassee, and that the Seaboard
was able, ready and willing to complete the transporta-
tion to Tallahassee. The reply to this is that the replica-
tions are departures from the declaration, as well as a
departure from the original order of the commissioners
for the alleged violation of which the penalty sued for
was imposed, and presents a different question. Andrews'
Stephens Pleadings, Section 211 p. 402. If the de-
fendant railway had been requested to furnish transpor-
tation for freight to River Junction and there to deliver
it to the Seaboard under the rules and regulations of the
Railroad Commission, which in such cases the commis-
sioners by the statute are fully authorized to make, and
the defendant had refused compliance with the request
without a sufficient excuse, we think it would clearly
have subjected itself to the penalties of the act. See the
case of Houston, E. & W. T. Ry. Co. v. Campbell, 91
Texas 551, 45 S. W. Rep. 2, S. C. 43 L. R. A. 225, and
the notes.

It is also contended that under the provisions of Sec-
tions 6, Chapter 4700, *supra,* the fact of the fixing and

imposing of the fine by the Commissioners is "prima facie evidence of everything necessary to create liability or to require the payment of the fine or penalty as fixed and imposed and to authorize a recovery thereon in any action or proceeding brought by the Commissioners." The reply to this contention is that whatever powers the Commissioners exercise, whether judicial, executive or ministerial, must be found in the law, and that where it is shown by their orders that they have exercised a power not conferred by the law the orders themselves are necessarily void. Queen v. Railway Commissioners, L. R. 22 Q. B 642, 40 Am. & Eng. Railroad Cases, 59; Littlefield v. Fitchburg Railroad Co., 158 Mass. 1, 32 N. E. Rep. 859.

We think it inexpedient to discuss the constitutional questions presented by the demurrer to the declaration, inasmuch as the briefs of the defendant in error in that regard are not full or satisfactory, and the questions are scarcely discussed in the brief of the plaintiff. This court must accept the constitutionality of the provisions of a statute until satisfied beyond a reasonable doubt to the contrary, and will not pass upon the constitutionality of a law in any case unless it is necessary to do so. This doctrine is peculiarly applicable to cases like the one we are considering. As far back as 500 B. C. the Romans, still possessing the free spirit of their ancestors, found it necessary to create the office of Tribune, whose duties were to protect the masses against what the Latin writers were pleased to name, *"nobilitatis superbia,"*—the arrogant encroachments and oppression of the rich and powerful. The struggle then commenced, under other conditions and other names and forms still goes on; and will perhaps never cease until men shall have learned to perfectly obey the teachings of the golden rule. Laws cre-

ating Railroad Commissions with their powers and duties are but a modern form of expression of the desire of men for just and fair treatment at the hands of the powerful. They have been enacted in England and perhaps all the American States. The courts should be cautious in considering them and slow in laying upon them, or upon any reasonable feature of them the withering blight of judicial disapprobation.

Applying what we have said, the demurrer of the plaintiffs reached back to the declaration, even if we did not consider the demurrer to the declaration, and we are of opinion that the orders of the Railroad Commissioners imposing penalties upon the defendant in error for violation of the orders as made by the Commissioners were without authority of law, and that the Circuit Judge committed no error in the judgment appealed from.

The judgment is affirmed at the cost of the plaintiff in error.

TAYLOR and PARKHILL, JJ., concur.

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ. concur in the opinion.