Com'rs. Franklin Co. v. State ex rel. Patton—Syllabus.

ment from exercising any of the powers appertaining to either of the others. We think otherwise. The court adjudges costs, but when these are against the State, where the Constitution and statutes authorize it, there the power of the court ceases.

As to the moneys of the State, they can only be disbursed by the Treasurer upon the order of the Comptroller, countersigned by the Governor. Sec. 24, Art. IV, of the Constitution. The court cannot direct that an execution be issued for the collection of those costs ; and the State will pay them only in such way as itself prescribes. In the case of witnesses they should be put upon the pay roll and paid as the statute directs.

Our conclusion is, that the witnesses in the case were entitled to pay from the State, but that the court erred in going beyond a general judgment to that effect. The payment is to be made through the Comptroller and the Clerk, in accordance with the directions of the statute, Chapter 3701.

The order of the court is reversed.

COUNTY COMMISSIONERS OF FRANKLIN COUNTY, PLAINTIFFS IN ERROR, VS. STATE EX REL. GEO. A. PATTON, ET AL., DEFENDANTS IN ERROR.

1. The constitutionality of an act cannot be called in question by a party whose rights its enforcement does not affect.

2. A statute which requires inspectors to canvass the votes of an election and "make due returns of the same to the County Commissioners of the county in which the election was held," imposes thereby upon such commissioners the duty of receiving and keeping the returns in their official custody, as records of the result of the election.

3. Neither the constitutionality of such statute, nor the legality of the election held thereunder, can be considered or passed upon by the commissioners officially ; nor can the same be raised by them as grounds for not performing such duty, in a mandamus proceeding brought to compel its performance.

4. A paper is filed when it is delivered to the proper officer and received by him to be kept in his official custody. The usual file marks are but one evidence of the filing.

Writ of Error to the Circuit Court for Franklin county.

The facts of the case are stated in the opinion.

*John S. Beard* and *H. C. Hicks* for Plaintiffs in Error.

*D. S. Walker, Jr.*, for Defendants in Error.

MR. JUSTICE RANEY delivered the opinion of the court :

The act of June 2d, 1887, providing for the enforcement of the Local Option or 19th Article of the Constitution, makes it the duty of the inspectors of election, appointed thereunder, to canvass the vote cast and to make due returns of the same to the County Commissioners of the county in which an election may be held.

The purpose of the proceedings in this case is to compel the Commissioners of Franklin county to receive the returns of an election held in that county under said act, (Chapter 3700,) on the 23d day of last August, and to file the same as public records and documents of the county. Nothing more is asked.

Article XIX of the Constitution provides that the Board of County Commissioners of each county in the State, not oftener than once in every two years, upon the application of one-fourth of the registered voters of any county, shall call and provide for an election in the county in which the application is made to decide whether the sale of intoxicat-

ing liquors, wines or beer shall be prohibited therein, the question to be determined by a majority vote of those voting at the election, which election, it provides, shall be conducted in the manner provided by law for holding general elections. It also provides that elections under it shall be held within sixty days from the time of presenting the application, but that if any such election should thereby take place within sixty days of any State or national election, it shall be held within sixty days after any such State or national election. By its provisions, intoxicating liquors, either spirituous, vinous or malt, cannot be sold in any election district in which a majority vote was cast against the same at the said election; and " the Legislature shall provide necessary laws to carry out and enforce the provisions " of the article.

The alternative writ was demurred to on two grounds, viz: 1st, that the statute under which the election was held is repugnant to the provisions of. the above article of the Constitution; and, 2d, the act does not require the County Commissioners to file the returns of such an election.

The demurrer having been overruled, the commissioners made a " return " to the writ, setting up that the election was not held in accordance with the provisions of the general election law, approved June 7th, 1887, which is chapter 3704, and is entitled " An act to provide for the registration of all legally qualified voters in the several counties of the State, and to provide for a general election and for the returns of elections," in this:

1st. That section 8 provides that immediately upon the passage of this law, and every two years thereafter, the Governor shall appoint, subject to the removal by him, in each county, one competent and discreet person, who shall be a qualified elector, to be known as the Supervisor of

Registration of Electors, and that he shall appoint a registration officer for each election district, whose duty it shall be to attend to the registration of electors in each district, as in such act provided; whereas, the *Clerk of the Circuit Court* of Franklin county appointed the deputy registration officer in each voting precinct in the county to register voters at the stated election.

2d. That section 29 of the general election law requires inspectors of elections to make returns to the Supervisor of Registration and County Judge, whereas the inspectors of the election in question made returns to the County Commissioners.

The only effect of this paper is to raise again, and in an improper manner, the question of the constitutionality of the former statute, and the legality of the election thereunder, covered by the demurrer.

The Circuit Court, on motion of the relators, quashed this return and gave judgment that the peremptory writ issue.

Not only is it true that a court will not, as a general rule, pass upon a constitutional question and decide a statute to be invalid, unless a decision upon that very point becomes necessary, but it is also a rule that a court will not listen to an objection made to the constitutionality of a statute by a party whose rights it does not affect, and who has, therefore, no interest in defeating it. Cooley's Constitutional Limitations, (5th edition,) 197. A party who seeks to have an act of the Legislature declared unconstitutional, must, says the Supreme Court of Alabama, in Jones *et. al.*,vs. Black *et al.*, 48 Ala., 540, not only show that he is or will be injured by it, but he must also show how and in what respect he is or will be injured and prejudiced by it. Injury will not be presumed; it must be shown. The complainants, sued as residents and electors of the

county, without showing any injury to themselves in person, property or rights, and it was held that the act would not be declared unconstitutional on their application to enjoin the holding of an election on the ground that the statute was unconstitutional.    See also Smith *et al.*, vs. McCarthy, 56 Penn. St., 359.

The validity of an act, says the Supreme Court of Massachusetts, can be called in question only by those having a direct interest in the rights supposed to be injuriously affected by its provisions, and no one can interpose to ask for the interference of this court to declare the act void, or to prevent its full operation, except so far as may be necessary to support and protect their own property or rights from unauthorized injury or invasion.  H. and Q. Bridge and T. Co. vs. County of Norfolk, 88 Mass., (6 Allen,) 360. In this case a statute was passed making the turnpike a common highway, and providing for the appointment of commissioners to award the amount to be paid to the turnpike corporation as damages, and in what proportions the same should be paid by the counties in which the turnpike lay, and to award certain other matters and things, and it was held that Norfolk, one of the counties, could not object to the constitutionality of the act on the ground of the effect of the Legislature in establishing the turnpike as a common highway, on the rights of abutters owning land over or through which the turnpike was originally laid out, and on the pecuniary interest of the several towns on which the burden of supporting the road as a highway was imposed. See also Wellington, *et al.*, vs. Petitioners, 16 Pick., 87.

In People vs. Rensselaer and Saratoga R. R. Co., 15 Wend., 113; S. C., 30 Am. Dec., 1, where the Attorney-General filed an information in the nature of a *quo warranto* to contest respondent's right to build a bridge across the

60    SUPREME COURT.

Com'rs. Franklin Co. v. State ex rel. Patton—Opinion of Court.

Hudson, at Troy—a power covered by the terms of the company's charter—it was held that the constitutionality of a legislative act cannot be called in question by the people, but that individuals, alleging themselves to be injured thereby, can alone raise the question.

In Lopez vs. State, 42 Texas, 298, where a motion had been made in the lower court for a new trial on the ground that there was no constitutionally appointed clerk, and refused, and the refusal was assigned as error, it was held that the constitutionality of the statute under which the appointment was made would not be determined on an appeal in a criminal cause, with which the clerk had no further connection than as acting clerk, certifying the transcript.

In Marshall vs. Donovan, et. al., 10 Bush, 681, where Marshall, a white person, objected to a tax because the statute under which it was imposed did not extend its benefits to colored children, and was, therefore, unconstitutional, it was held that as Marshall was not a person of color, it was not necessary to decide the point, and that courts will not listen to an objection made to the enforcement of a statute as unconstitutional by a party whose rights it does not affect, and who has, therefore, no interest in defeating it. See also Williamson vs. Carleton, 51 Maine, 449; Dejarnette vs. Haynes, 23 Miss., 600.

It is also a rule that where County Commissioners, or other similiar boards of ministerial officers, are authorized to canvass the result of elections and declare the result as shown by returns made to them by inferior boards, they cannot pass upon any question of the illegality of the election or of votes cast at the same, nor set up the same as ground for resisting a mandamus brought to compel them to canvass the same. State *ex rel.* Bloxham vs. Board State Canvassers, 13 Fla, 55 ; State *ex rel.* Drew vs. State Canvassing Board, 16 Fla., 17. In the latter case the

statute provided that if any returns made to the State Canvassing Board by the county canvassers "shall be shown or shall appear to be so irregular, false or fraudulent that the [former] board shall be unable to determine the true vote for any officer or member, they shall so certify and shall not include such return in their determination and declaration," and it was held that whether a vote cast at an election was legally cast, or whether an election held on the day appointed, of which due returns were made, was a legal election, were judicial questions which the State Board could not determine.

As a reason why they should not be compelled to canvass the return from one county (Manatee) the State Canvassers set up that the votes of persons not registered had been received, and that no registration lists had been furnished the inspectors, and there had been no designation of voting places and no notice of the election, by the county officers. To this, the court answered as follows: "Like the question of the legality of a vote, this is a question of law to be determined by a court, a judicial question beyond the power and jurisdiction of a ministerial officer under the law, constitutional and statutory. A return of votes cast at such general election, duly signed by acknowledged county officers, and regular in form, of which election no notice by county officers as to polling places is given (the time of election being according to the general notice), is a return which the State Canvassers must count, as it is neither irregular, false or fraudulent within the meaning of the statute. Whether such vote is effective to vest the office is a question judicial in its character, which this court, upon mandamus, should no more determine than should the State Canvassers. Such canvassers must count such returns, and so this court should order. Whether all their votes so returned, are legal votes, is another question,

which neither the State Canvassers can determine in their action, nor should this court determine it, when it is sought to direct them to perform ministerial duties." See also State vs. Hill, 10 Nebraska, 58 ; Howard *et al.*, vs. McDiarmid, 26 Ark., 100.

The provisions of the statute under consideration require the inspectors of election to canvass the vote cast, and to "make due returns of the same to the County Commissioners, within five days after said election." This provision imposes, by implication, upon the County Commissioners the duty of receiving such returns, when so made, into their official custody and keeping. It makes them the official depository of the same as records of the result of the election just as much as if the statute said in express language they should so receive and file them. To hold to the contrary would make the statute meaningless, and require of the inspectors the idle ceremony of tendering the returns to the commissioners without imposing upon the latter a corresponding duty of receiving them ; and under such a construction the provision in question would either have no effect, or would relieve the inspectors of any responsibility for the care of the returns after the futile performance of offering them to officials who are not bound to receive them, had been even most solemnly enacted.

If any further duty is imposed upon the commissioners than our understanding, as above expressed, indicates, we do not now perceive, nor, even if it be so, does the writ call for the performance of any further duty. There is nothing in the objection that the statute does not require the commissioners to "*file*" the returns. A paper is filed when it is delivered to the proper officer and by him received to be kept on file. Bouvier's Law Dictionary, FILE. The usual file marks are but one evidence of its having been filed. Willingham vs. State, 21 Fla., 788, 789. The duty of filing

usually includes that of putting on such marks. It is the duty of the County Commissioners to receive these returns and to put and keep them in the same custody they put and keep their papers and books and other official records, and have the same file marks put on them as are usually put on their papers.

The duty of the commissioners being merely to receive and keep in their official custody the returns, as indicated, such duty involves no consideration by them of the legality of the election held under their call, nor does it permit them to raise before us the question of such legality as a reason for not performing their stated function; nor does its performance decide or conclude anything as to the legality of the election, but merely preserves the evidence of the actual result of the same as shown by the returns. The statute has not given, even if it could do so under our Constitution, to them the power to decide any such question, nor is this a proceeding for us to decide it in, nor are the proper parties before us. As County Commissioners they are not charged with the duty of raising the question in behalf of those who may have personal interests, which the enforcement of the 19th Article of the Constitution may effect. If they have such personal interests themselves, these interests do not attach to their official duties as commissioners, and cannot be permitted to stand in the way of their performance. If there be any person in Franklin county whose personal interests the enforcement of such article affects, the County Commissioners are not the tribunal authorized to pass upon either the validity of the act or the legality of its enforcement. The validity of such act, and of the proceedings thereunder, will be considered when parties having interests affected by either are before us.

The County Commissioners have, as such, no right that will be affected by the performance of the duty imposed upon them by the statute, nor will their performance of such duty injure any person's rights that may be affected by an enforcement of the article of the Constitution questioned.

The judgment is affirmed.