THE STATE OF FLORIDA, *ex rel.* ATLANTIC COAST LINE RAIL-
ROAD CO., *Relator,* v. THE BOARD OF EQUALIZERS OF THE
STATE OF FLORIDA, CONSISTING OF CARY A. HARDEE, GOV-
ERNOR, RIVERS BUFORD, ATTORNEY GENERAL AND J. C.
LUNING, STATE TREASURER, *Respondents.*

Opinion filed November 20, 1922.

Petition for rehearing denied December 12, 1922.

1. Every law found on the statute books is presumptively con-
stitutional, until declared otherwise by the court, and an of-
ficer of the executive department of the government has no
right or power to declare an act of the legislature to be un-
constitutional, or to raise the question of its constitutionality
without showing that he will be injured in person, property
or rights by its enforcement.

2. Officers must obey a law found upon the statute books, until
in a proper proceeding its constitutionality is judicially
passed upon.

3. Every act of the legislature is presumably constitutional un-
til judicially declared otherwise, and the oath of office "to
obey the constitution," means to obey the constitution,—not
as the officer decides—but as judicially determined.

4. The right to declare an Act unconstitutional is purely a ju-
dicial power, and cannot be exercised by the officers of the
executive department under the guise of the observance of
their oath of office to support the constitution.

5. It is well settled that this court will not pass upon the con-
stitutionality of a law in any case unless it is necessary to
do so.

6. A court will not, as a general rule, pass upon a constitutional
question and decide a statute to be invalid, unless a decision
upon that very point becomes necessary, and it is also a rule

that a court will not listen to an objection made to the constitutionality of a statute by a party whose personal or property rights it does not affect, and who has, therefore, no interest in defeating it.

7. In mandamus proceedings against a public officer involving the performance of official duty, nothing can be inquired into but the question of duty on the face of the statute and the ministerial character of the duty he is charged to perform.

A case of original jurisdiction.

Peremptory writ awarded.

*W. E. Kay* and *Doggett, Christie & Doggett,* for Relator.

*Rivers Buford,* Attorney General, for Respondents.

BROWNE, C. J.—Upon the petition of the Atlantic Coast Line Railway Company, an alternative writ of mandamus was issued to the Board of Equalizers of the State of Florida, consisting of Cary A. Hardee, Governor, Rivers Buford, Attorney General, and J. C. Luning, State Treasurer, commanding them to take jurisdiction of an appeal taken by the relator from the assessment and valuation by the Comptroller of the property of the Atlantic Coast Line Railway Company for taxation for the year 1922.

The petition for the writ alleges that the Comptroller did value and assess the property of the Atlantic Coast Line Railway Company and give notice to the relator of such assessment and valuation; that the relator was dissatisfied with the valuation made by the Comptroller and did enter and file its appeal to the Board of Equalizers of the State of Florida as provided for in Section 7, Chapter 8584, Acts of 1921, Laws of Florida.

The alternative writ also alleges that the respondent, the "Board of Equalizers held and decided that it had no jurisdiction of said appeal and declined to hear and entertain and determine the same, upon the ground that the title of the Act constituting Chapter 8584, Acts of 1921, Laws of Florida, was not sufficient to include the provisions of Section 6 within such Act."

This the return admits, and the effect of this admission and the averment in the 6th paragraph of the return, is, that the respondents refused to obey Sections 6 and 7 of Chapter 8584, Acts of 1921, Laws of Florida, because they consider them unconstitutional. The sufficiency of this return is challenged by the motion for a peremptory writ.

This raises at the outset the question: has a ministerial officer the right or power to declare an Act unconstitutional, or to raise the question of its unconstitutionality without showing that he will be injured in person, property, or rights by its enforcement?

Every law found upon the statute books is presumptively constitutional until declared otherwise by the courts, and the allegation in the return that Section 6 is unconstitutional, means that it has been so declared by a court of competent jurisdiction.

This court, therefore, is confronted at once with the question, "Is that allegation true?" Finding that it is not—the power to declare an Act unconstitutional being lodged nowhere but in the courts—such an allegation in the return is no defense. We are, therefore, not called upon to pass upon the constitutionality of the Act because it not having been declared unconstitutional by the courts, ministerial officers must obey it, until in a proper proceeding its constitutionality is judicially passed upon.

The question here presented is most important. It involves the right of a breach of the government, other than the judiciary, to declare an Act of the legislature to be unconstitutional.

When Mr. Chief Justice Marshall first laid down the doctrine that the judiciary was clothed with power to pass upon the constitutionality of legislative Acts, it met with violent opposition. Great publicists, including Mr. Thomas Jefferson, Spencer Roan, Niles of Niles Register, and others denied the right of the courts to pass upon the constitutionality of a regularly enacted statute. Andrew Jackson also thundered against it.

For many years the doctrines expounded by Chief Justice Marshall seemed settled and secure, and no longer questionable. Recently a well organized movement has been inaugurated in this country to take this power away from the courts, and at the recent election there were nearly sixty candidates for Congress who have pledged themselves to modify, if not to entirely abrogate, this great doctrine, without which governments limited by written constitutions will be destroyed. Any tendency on the part of the courts to extend this doctrine and to recognize the right or power of ministerial officers to refuse to enforce a law found on the statute books, whenever, in their judgment, it is unconstitutional, will give impetus to the movement to abrogate or limit this power of the courts.

The contention that the oath of a public official requiring him to obey the constitution, places upon him the duty or obligation to determine whether an Act is constitutional before he will obey it, is, I think, without merit. The fallacy in it is that every Act of the legislature is presumably constitutional until judicially declared otherwise, and the oath of office "to obey the constitution," means

to obey the constitution—not as the officer decides—but as judicially determined.

The doctrine that the oath of office of a public official requires him to decide for himself whether or not an Act is constitutional before obeying it, will lend to strange results, and set at naught other binding provisions of the constitution.

An illustration—one not conjured by an active imagination, but potent with immediate possibilities—is this: Under Section 28 of Article III of the constitution of Florida, the Governor may refuse to sign a bill that has passed the legislature and "return it with his objections to the house in which it originated, which house shall cause such objections to be entered upon its journal, and proceed to reconsider it; if after its reconsideration it shall pass both houses by a two-thirds vote of the members present, which vote shall be entered on the journal of each house, it shall become a law."

Bills are frequently returned to the legislature by the Governor without his approval, because in his opinion, they are unconstitutional. That power is lodged in him, but it will be observed that it is a bill that has not yet become a law, and not a regularly enacted statute upon the constitutionality of which he expresses himself in his veto message. Having done this, and the legislature upon reconsideration having passed the bill in both houses by the vote of two-thirds of the members present, what then becomes of the doctrine of the obligation or duty of a public officer to refuse to obey a law which he believes to be unconstitutional, but which has not yet been so declared by the courts? If it is sound, the passage of a bill over his veto is perfunctory, because under that doctrine the Governor would have to refuse to enforce the law that was

VOL. 84, JUNE TERM, 1922. 597

State ex rel. A. C. L. R. R. Co. v. The B. of E. of Fla.—Opinion of Court.

passed over his veto. In fact the Governor need not return to the legislature without his approval any bill that he believes to be unconstitutional. He may sign it, or let it become a law without his signature, and then refuse to enforce it under the doctrine that his oath to obey the constitution requires him not to enforce a law that he believes to be unconstitutional.

It is contended that an individual may refuse to obey a law that he believes to be unconstitutional, and take a chance on its fate in the courts. He does this, however, "at his peril," the "peril" being to suffer the consequences, such as fine or imprisonment or both, if the courts should hold the Act to be constitutional.

A ministerial officer refusing to enforce a law because in his opinion it is unconstitutional takes no such risk. He does nothing "at his peril," because he subjects himself to no penalty if his opinion as to the unconstitutionality of an Act is not sustained by the courts.

It is the doctrine of nullification, pure and simple, and whatever may have been said of the soundness of that doctrine when sought to be applied by States to Acts of Congress, the most ardent followers of Mr. Calhoun never extended it to give ministerial officers the right and power to nullify a legislative enactment.

It is lodging in them the same power that exists in the Circuit and inferior courts, which may declare an Act unconstitutional, subject to review by the Supreme Court.

The right to declare an act unconstitutional is purely a judicial power, and cannot be exercised by the officers of the executive department under the guise of the observance of their oath of office to support the constitution. It is true that the Supreme Court of Nebraska in Van Horn

v. State, 46 Neb. 62, 64 N. W. Rep. 365, and a few other courts have held that ministerial officers had the right, but there are so many better reasoned cases to the contrary, that we will not adopt the Nebraska doctrine.

A higher sense of duty was thus expressed by President Lincoln in his First Inaugural Address to Congress: ''I do suggest that it will be much safer for all, both in official and private stations, to conform to and abide by all those Acts which stand unrepealed than to violate any of them trusting to find impunity in having them held to be unconstitutional.''

In Illinois, the first attempt by a ministerial officer to exercise judicial function of declaring a law unconstitutional met with prompt disapproval in the Supreme Court of that state. The court said: ''The law under which this additional tax was imposed, had passed the legislature under all the forms of the constitution, and had received executive sanction, and became, by its own intrinsic force, the law to you, to every other public officer in the State, and to all the people. You assumed the responsibility of declaring the law unconstitutional, and at once determined to disregard it, to set up your own judgment as superior to the expressed will of the legislature, asserting, in fact, an entire independence thereof. This is the first case in our judicial history, in which a ministerial officer has taken upon himself the responsibility of nullifying an Act of the legislature for the better collection of the public revenue— of arresting its operation—of disobeying its behests, and placing his own judgment above legislative authority expressed in the form of law.

''To the law every man owes homage, 'the very least as needing its care, the greatest as not exempted from its power.' To allow a ministerial officer to decide upon the

validity of a law, would be subversive of the great objects and purposes of government, for if one such officer may assume infallibility, all other like officers may do the same, and thus an end be put to civil government, one of whose cardinal principles is, subjection to the law.'' People *ex rel.* Attorney General v. Salmon, 54 Ill. 39.

Passing now to the next point: It is well settled that this court ''will not pass upon the constitutionality of a law in any case unless it is necessary to do so.'' State *ex rel.* Morgan v. Louisville & N. R. Co., 51 Fla. 311, 40 South. Rep. 885.

In State *ex rel.* Russo v. Parker, 57 Fla. 170, 49 South. Rep. 124, this court reiterated the doctrine in this language: ''Where a court can effectually and properly dispose of a case without passing upon the constitutionality of a statute involved, it is, its duty to do so.''

The same doctrine was announced by this court in the two cases of State *ex rel.* Wolyn v .Apalachicola N. R. Co., 81 Fla. 383, 87 South. Rep. 909, and State *ex rel.* Wolyn v. Apalachicola N. R. Co., 81 Fla. 394, 88 South. Rep. 310.

In the instant case the question involved is the power of a ministerial officer to refuse to perform a statutory duty because in his opinion a law is unconstitutional that has not been passed upon up the judiciary. This question can be decided without passing upon the constiution-ality of the statute involved, and we should dispose of it upon that phase only.

It is no answer, to say that the courts will not require a ministerial officer to perform an unconstitutional act. That aspect of the case is not before us. We must first de-termine the power of the ministerial officer to refuse to perform a statutory duty because *in his opinion* the law

is unconstitutional. When we decide that, we do not get to the question of the constitutionality of the Act, and it will not be decided.

There is another doctrine of this and other courts that makes the return to the writ insufficient to prevent the issuance of the peremptory writ, and that is, that it does not appear from the return, nor do we think that it can be made to appear, that the respondents have any material interest—personal or pecuniary—that would be injuriously affected or prejudiced by the Act in question, entitling them to question its constiutionality.

This rule was followed by this court in the case of County Commissioners of Franklin County v. State *ex rel.* Patton, 24 Fla. 55, 3 South. Rep. 471, where it was said: "Not only is it true that a court will not, as a general rule, pass upon a constitutional question and decide a statute to be invalid, unless a decision upon that very point becomes statutory, but it is also a rule that a court will not listen to an objection made to the constitutionality of a statute by a party whose rights it does not affect, and who has, therefore, no interest in defeating it. Cooley s Const. Lim. (5th Ed.) 197. A party who seeks to have an Act of the legislature declared unconstitutional, must, says the Supreme Court of Alabama, in Jones et al. v. Black et al., 48 Ala. 540, not only show that he is or will be injured by it, but he must also show how and in what respect he is or will be injured and prejudiced by it. Injury will not be presumed; it must be shown. The complainants, sued as residents and electors of the county, without showing any injury to themselves in person, property or rights, and it was held that the act would not be declared unconstitutional on their application to enjoin the holding of an election on the ground that the statute was unconstitutional."

The case of Board of Public Instruction for Santa Rosa County v. Croom, 57 Fla. 347, 48 South. Rep. 641, is not in conflict with the doctrine herein announced. In that case Mr. Knott's interest was directly affected. He was State Treasurer, and under a heavy bond. If he paid money out of the Treasury under the provisions of an unconstitutional Act, he or his bondsman would have had to bear the loss. His right to raise the question of the constitutionality of the Act involved did not grow out of the obligation of his oath of office, nor out of his official position, but because he was liable to be injured pecuniarily.

The case of Wade v. Atlantic Lumber Co., 51 Fla. 628, 41 South. Rep. 72; Disston v. Board of Trustees of Internal Improvement Fund of State of Florida, 75 Fla. 653, 79 South. Rep. 295, are not authority for the doctrine that ministerial officers have the right to declare a statute unconstitutional, when their material rights are not affected by it. The Wade case was a suit in equity between private parties, and no State officer was a party.

In the Disston case, it was sought to establish and enforce a trust based upon an alleged agreement between the Trustees of the Internal Improvement Fund, which agreement was entered into by the Trustees in accordance with the provisions of Chapter 3996, Laws of Florida, Acts of 1889. The lands had passed from the Trustees to parties who were made defendants, and they as well as the Trustees alleged, as one of the grounds of their demurrers, that the Act under which the agreement was entered into between the Trustees and those from whom the complainants derived title, was unconstitutional. There were private parties before the court, whose right to the lands was assailed, who also raised the question of the constitutionality of the Act, which the court could not refuse to

decide without affecting their rights. Although the question of the material interest of the Trustees of the Internal Improvement Fund did not arise, we can see that they being the Trustees of vast acres of land granted to the State, might come within the rule that an officer who can show that he would be injured in his person, or property or other material right, may raise the question of the constitutionality of a statute.

In neither of these cases, however, was the question here involved presented or decided, and they are therefore no authority for the rule that a ministerial officer whose material rights would not be affected by the enforcement of a law, cannot declare it unconstitutional and refuse to enforce it.

No useful purpose will be served by citing and quoting from the decisions of other States upon this point, but reference is made to the case of State ex rel. New Orleans Canal & Banking Co. v. State Auditor, 47 La. Ann. 1679, 18 South. Rep. 746, reported in 47 L. R. A. 512, and copiously annotated. We will, however, give one citation from that case. "In mandamus proceedings against a public officer, involving the performance of official duty, nothing can be inquired into but the question of duty on the face of the statute and the ministerial character of the duty he is charged to perform. After careful investgation of the authorities, we feel fully confirmed in the correctness of the conclusions we arrived at in State ex rel. Nicholls v. Shakespeare, and other cases, to the effect that executive officers of the State government have no authority to decline the performance of purely ministerial duties which are imposed upon them by a law, on the ground that it contravenes the constitution. Laws are presumed to be, and must be treated and acted upon by subordinate executive functionaries as constitutional and legal, until their

unconstitutionality or illegality has been judicially established; for in a well-regulated government obedience to its laws by executive officers is absolutely essential and of paramount importance. Were it not so, the most inextricable confusion would inevitably result, and 'produce such collision in the administration of public affairs as to materially impede the proper and necessary operations of government.' 'It was surely never intended that an executive functionary should nullify a law by neglecting or refusing to execute it.' The result of this conclusion is that the respondents are without right to urge the unconstitutionality of the concurrent resolution which is involved."

Cases can be found on both sides of the question now before us. They are fully and with much care compiled in 12 Corp. Jur. 765. The great weight of the authorities, both in number and persuasiveness, supply the conclusion reached by us.

Sections 6 and 7 of Chapter 8584 not having been judicially declared unconstitutional, the allegation in the return as to its unconstitutionality is unwarranted, unauthorized and affords no defense to the allegations of the writ, and the peremptory writ will issue.

TAYLOR AND ELLIS, J. J., concur.

WHITFIELD AND WEST, J. J., dissent.

WHITFIELD, J., Dissenting.—The decision in this case is, that although a statutory provision be unconstitutional and void, the highest executive officers of the State should execute it until it is declared by the courts to be invalid; and that the Governor, Attorney General and State Treasurer cannot question the validity of an enactment in an

action to enforce it brought against such officers, with the result that a peremptory writ of mandamus is to command the Governor, the Attorney General and the State Treasurer to execute a provision of a statute which provision the highest executive officers of the State, under oath, solemnly aver to be in conflict with a designated command of the State Constitution, which Constitution all officers of the State, whether legislative, executive or judicial, are required by the Constitution to take an oath to ''support, protect and defend.''

The legislative department enacts a provision which the executive department declines to execute on the ground that it violates a stated provision of the constitution, and the judicial department issues a peremptory command to the highest executive officers of the State to execute the enactment solemnly averred by them to be unconstitutional and void, the court declining to determine the validity of the provision at the instance of the Governor, the Attorney General and the State Treasurer, who are the only parties who can challenge the validity of the enact-ment when its enforcement is sought in the courts. This has not heretofore been the law in this State.

In Section 4 of the Declaration of Rights of the Florida Constitution, it is provided that ''all courts in this State shall be open, so that  *  *  *  right and justice shall be administered without sale, *denial* or delay.''

If the statutory provision sought to be enforced is invalid an assessment made under it would be void and the State would not receive the taxes it is entitled to under the constitution and laws. When the law is to be enforced by the courts, no one except the Governor, the Attorney General and the State Treasurer, who are the respondents in the action, can aver the invalidity of the enactment sought

VOL. 84, JUNE TERM, 1922. 605

State ex rel. A. C. L. R. R. Co. v. The B. of E. of Fla.—Dissenting Opinion

to be enforced; and the Governor, the Attorney General and the State Treasurer, who are the representatives of the State, being denied an opportunity to test the validity of the enactment and being *commanded* to execute the provision whether it be constitutional or not, the State encounters a denial of justice in its own courts. A determination of the validity of the statute is essential to a proper disposition of this case. Both parties present that issue and ask a decision.

The assertion by the relator of the validity of the enactment does not establish its validity and would not estop others from contesting the constitutionality of the provision if an assessment of property be made under the alleged invalid enactment. The court has the power and it is its duty to adjudicate the question raised by the highest executive officers of the State, who are the respondents in the action, as to the validity of the enactment that involves serious consequences to the State.

The Governor is by the constitution required to "take care that the *laws*," not void enactments, "be faithfully executed." Sec. 6, Art. IV. The Attorney General is "the legal adviser of the Governor, and of each of the officers of the executive department," Sec. 22, Art. IV; and he is by statute required to "give his official opinion and legal advice" to the Governor and State executive officers. Sec 87 Rev. Gen. Stats. 1920. The official opinions of the Attorney General, the chief law officer of the State, as to the validity or invalidity of a statute, are the guide for State executive and administrative officers in performing their official duties, until such opinions are superseded by judicial decisions or opinions. It is therefore appropriate that the Governor and the Attorney General and other executive officers of the State

should contest, and that the courts should determine the validity of, an enactment that imposes upon such officers duties involving executive and administrative powers and discretion, when the enactment is sought to be enforced by the courts, the Attorney General having held it to be invalid. If a legislative enactment imposing administrative and executive duties upon executive officers of the State, is held by the Attorney General to be unconstitutional and void, it is the duty of the executive officers to present the matter for adjudication, whenever a judicial enforcement of the enactment is sought. Otherwise a void enactment may be executed contrary to the welfare of the State and in violation of the constitution and of the oaths of office. Courts cannot justly decline to entertain justiciable matters duly presented by State executive officers seeking to protect the interests of the State and of the public whose representatives such officers are. Heretofore the courts of this State have adjudicated questions as to the validity of statutes when such matters have been presented by State officers whose official duties were affected by the main purposes of such challenged statutes, 39 Fla. 477 ; 36 Fla. 358. In this case the Governor of the State is one of the respondents. See State ex rel. Bisbee v. Drew, 17 Fla. 67 ; State ex rel. Robb v. Stone, 120 Mo. 428, 25 S. W. Rep. 376, 23 L. R. A. 194 ; 18 R. C. L. p. 197, 199 ; Huidekoper v. Hadley, 100 C. C. A. 395, 177 Fed. Rep. 1, 40 L. R. A. (N. S.) 505.

If the State officers had obeyed the enactment the relator could have asserted the invalidity of the provision and had a decision of the issue ; but it now seems that although the Governor, the Attorney General and State Treasurer under their oaths of office and on their responsibility as executive officers of the State, considered it

their duty to regard the enactment as violative of the constitution, yet they cannot assert the invalidity of the provision for the purpose of judicial decision. This does not accord with prior decisions of this court that are herein cited.

This court has repeatedly held that an officer of the State will not be compelled by mandamus to obey a statute that conflicts with the constitution. State *ex rel.* Russell v. Barnes, 25 Fla. 75, 5 South. Rep. 698; State *ex rel.* Russell v. Barnes, 25 Fla. 86, 5 South. Rep. 703; State *ex rel.* Mitchell v. Bloxham, 26 Fla. 407, 7 South. Rep. 873; State *ex rel.* Murphy v. Barnes, 24 Fla. 29, 3 South. Rep. 433; State *ex rel.* Milton v. Dickinson et al., County Commrs., 44 Fla. 623, 33 South. Rep. 514, 60 L. R. A. 539. See also State *ex rel.* Willie v. Barnes, 22 Fla. 8; State *ex rel.* Weeks v. Gamble, 13 Fla. 9; McConihe v. State *ex rel.* McMurray, 17 Fla. 238; Board of Com'rs of Lafayette County v. Hadley, 63 Fla. 90, 59 South. Rep. 14; State *ex rel.* Kittel v. Jennings, 47 Fla. 307, 35 South. Rep. 986; State *ex rel.* Hubbard v. Holmes, 53 Fla. 226, 44 South. Rep. 179, and Florida cases therein cited; County Commissioners of Lake County v. State, 24 Fla. 263, 4 South. Rep. 795; Holland v. State *ex rel.* Duval County, 23 Fla. 123, 1 South. Rep. 521; State *ex rel.* Clyatt v. Hocker, 39 Fla. 477, 22 South. Rep. 721; Board of Com'rs of Escambia County v. Board of Pilot Com'rs of Port of Pensacola, 52 Fla. 197, 42 South. Rep. 697; State *ex rel.* Martin v. County Commissioners, 81 Fla. 271, 87 South. Rep. 917; State *ex rel.* Luning v. Johnson, 71 Fla. 363, 72 South. Rep. 477; State *ex rel.* Buford v. Spencer, 81 Fla. 211, 87 South. Rep. 634; State *ex rel.* v. Shepard, decided August 14, 1922; 36 Fla. 358; 37 Fla. 564.

In Board of Public Instruction for Santa Rosa County v. Croom, 57 Fla. 347, 48 South. Rep. 641; this court

sustained the action of a State officer in refusing to obey provisions of a statute that were by the court held to be unconstitutional. See also State *ex rel.* Holloway v. Sheets, 78 Fla. 583, 83 South. Rep. 508; State *ex rel.* Murphy v. Barnes, 24 Fla. 29, 3 South. Rep. 433.

In County Commissioners of Franklin County v. State *ex rel.* Patton, 24 Fla. 55, 3 South. Rep. 471, it was held that county commissioners could not challenge the validity of a statute which imposed upon them official duties that were merely ministerial and incidental to the main purposes of the act. See State *ex rel.* Russell v. Barnes, 25 Fla. 75, text 86, 5 South. Rep. 698, where the Patton case is explained.

The Governor and other State officers as Trustees of the Internal Improvement Fund refused to convey lands claimed by railroad companies under statutory grants, upon the ground that the statutory provisions making the grants were unconstitutional, and this court sustained the contentions. Disston v. Board of Trustees of Internal Improvement Fund of State of Florida, 75 Fla. 653, 79 South. Rep. 295; Wade v. Atlantic Lumber Co., 51 Fla. 628, 41 South. Rep. 72; Peters v. Gilchrist, 222 U. S. 483, 32 Sup. Ct. Rep. 122.

If the State officers had not challenged the validity of the enactments in the cases last above cited, the State would have lost many thousands of acres of land that were illegally granted. In this case if sections 6 and 7 of Chapter 8584 are inoperative, any section taken thereunder would have been futile and assessments made thereunder for the year 1922 would have been invalid; therefore it was the duty of the State officers in observing their oaths of office and in conserving the interests of the State, primarily to pass upon the validity of the statu-

tory provisions subject to judicial review. State *ex rel.* Russell v. Barnes, 25 Fla. 75, text 85, 5 South. Rep. 698; Story on Const. (5th Ed.) pp. 273, 274; State *ex rel.* Hubbard v. Holmes, 53 Fla. 226, 44 South. Rep. 179; State *ex rel.* Murphy v. Barnes, 24 Fla. 29, 3 South. Rep. 433. If the statute challenged is unconstitutional the officers cannot justify action taken under it. See State *ex rel.* Willie v. Barnes, 22 Fla. 8; State *ex rel.* Clyatt v. Hocker, 39 Fla. 477, 22 South. Rep. 721; State *ex rel.* Turner v. Hocker, 36 Fla. 358, 18 South. Rep. 767; Board of Liquidation v. McComb, 92 U. S. 521; Norton v. Shelby County, 118 U. S. 425, 6 Sup. Ct. Rep. 1121; State *ex rel.* Willie v. Barnes, 22 Fla. 8; State *ex rel.* Kittel v. Jennings, 47 Fla. 307, 35 South. Rep. 986; Trustees Internal Improvement Fund v. Root, 63 Fla. 666, 58 South. Rep. 371; 37 Fla. 564.

It has not heretofore been contended that the Governor and other State officers cannot challenge the constitutional validity of a statutory enactment involving their executive or administrative powers and duties. But the duty to do so has been adjudicated. State *ex rel* Russell v. Barnes, 25 Fla. 75, text 85, 5 South. Rep. 698. See also Crawford v. Gilchrist, 64 Fla. 41, 59 South. Rep. 963; State *ex rel.* Willie v. Barnes, 22 Fla. 8; State *ex rel.* Murphy v. Barnes, 24 Fla. 29, 3 South. Rep. 433; State *ex rel.* Mitchell v. Bloxham, 26 Fla. 407, 7 South. Rep. 873; State *ex rel.* Weeks v. Gamble, 13 Fla. 9; State *ex rel.* Hubbard v. Holmes, 53 Fla. 226, 44 South. Rep. 179, and Florida cases cited therein. See Cooley's Const. Lim. (7th Ed.) p. 73; State *ex rel.* Buchanan, 24 W. Va. 362; 6 R. C. L. p. 71; 12 C. J. 698; 8 Cyc. 726, as to when it is the duty of officers "to pass upon a question of constitutional construction," subject to judicial construction. See also Marbury v. Madison, 1 Cranch (U. S.)

20—Vol. 84.

137, 2 L, Ed. 60; Maynard v. Board of Canvassers, 84 Mich. 228, 47 N. W. Rep. 756, 11 L. R. A. 332. In Beckett, Governor, v. Tax Commission, 177 N. C. 433, 99 S. E. Rep. 415, the court adjudicated the validity of the act challenged by the State Tax Commission. The court is asked by the relator to so adjudicate in this case.

In State ex rel. Russell v. Barnes, 25 Fla. 75, text 85, 5 South. Rep. 698, this court said: "The Constitution and law have imposed upon the Comptroller the duty of auditing the relator's claim and drawing a warrant for the amount found to be due him. This duty necessarily involved his deciding upon the amount payable to relator as a salary, and he has decided it. If there was any conflict between the Constitution and statute as to the amount payable, he could not avoid a decision; it was within the official duty imposed. Relator questions the correctness of the decision and applies to us for relief; and the parties have submitted the question for our adjudication. If the Comptroller had gone beyond his official duty or prerogative by considering any question not involved in the performance of his duty, or if he had erred in his judgment as to the amount of salary payable, we should say so. We do not think that he has done either. A consideration of the decision in County Commissioners v. Patton, (24 Fla. 55, 3 South. Rep. 471) will discover that we held that the Commissioners neither had any personal interest or official duty under the statute then under consideration involving in any way the legality of the election in question." See State ex rel. Hubbard v. Holmes, 53 Fla. 226, text 228, 44 South. Rep. 179, where the Patton case is commented on.

A peremptory writ of mandamus will not be issued if it cannot be enforced. See State ex rel. Bisbee v. Drew,.

17 Fla. 67; State *ex rel.* Moody v. Call. 39 Fla. 165, 22 South. Rep. 266; Bates v. Taylor, 87 Tenn. 319, 11 S. W. Rep. 266, 3 L. R. A. 316.

The statute which the relator in this case seeks to enforce, prescribes official duties of the respondents who are the Governor, the Attorney General and the Treasurer of the State, and, as said in the above quotation, "If there was any conflict between the constitution and statute," the respondents "could not avoid a decision; it was within the official duty performed." See State *ex rel.* Mitchell v. Bloxham, 26 Fla. 407, 7 South. Rep. 873; Board of Public Instruction for Santa Rosa County v. Croon, 57 Fla 347, 48 South. Rep. 641; Disston v. Board of Trustees of Internal Improvement Fund of State of Florida, 75 Fla. 653, 79 South. Rep. 295; State *ex rel.* Murphy v. Barnes, 24 Fla. 29, 3 South. Rep. 433; State *ex rel.* Dickinson, 44 Fla. 623, 33 South. Rep. 514, 60 L. R. A. 539. See also State *ex rel.* University of Utah v. Candland, 36 Utah 406, 104 Pac. Rep. 285, 24 L. R. A. (N. S.) 1260. As to the right of an officer to interpose the unconstitutionality of a statute as a defense to mandamus, see State *ex rel.* Russell v. Barnes, 25 Fla. 75, text 86, 5 South. Rep. 698; McConihe v. State *ex rel.* McMurray, 17 Fla. 238; State *ex rel.* Murphy v. Barnes, 24 Fla. 29, 3 South. Rep. 433; State *ex rel.* Willie v. Barnes, 22 Fla. 8; State *ex rel.* Weeks v. Gamble, 13 Fla. 9; State *ex rel.* Guyton v. Croom, 48 Fla. 176, 37 South. Rep. 303; State *ex rel.* Kittel v. Jennings, 47 Fla. 307, 35 South Rep. 986; Woodall v. Darst, 71 W. Va. 350, 77 S. E. Rep. 264, 44 L. R. A. (N. S.) 83; Rhea v. Newman, 153 Ky. 604, 156 S. W. Rep. 154, 44 L. R. A. (N. S.) 989; Wiles v. Williams, 232 Mo. 56, 133 S. W. Rep. 1, 34 L. R. A. (N. S.) 1060; State *ex rel.* University of Utah v. Candland, 36 Utah 406, 104 Pac. Rep. 285, 140 Am. St. Rep. 834, 24 L. R. A. (N. S.)

1260; 12 C. J. 765; State *ex rel.* New Orleans Canal & Banking Co. v. Heard, 47 La. Ann. 1679, 18 South. Rep. 746, 47 L. R. A. 512 Notes; Commonwealth v. Mathues, 210 Pa. 372, 59 Atl. Rep. 961; Norman v. Kentucky Board of Managers, 93 Ky. 637, 20 S. W. Rep. 901, 18 L. R. A. 556; 18 R. C. L. 109; Hindman v. Boyd, 42 Wash. 17, 84 Pac. Rep. 609; 6 R. C. L. 92; Van Horn v. State, 46 Neb. 62, 64 N. W. Rep. 365; 26 Cyc. 491; 12 C. J. 765; Stockman v. Leddy, 55 Colo. 24, 129 Pac. Rep. 220, Ann. Cas. 1916B, 1052; Huntington v. Worthen, 120 U. S. 97; text 101, 7 Sup. Ct. Rep. 469; Smith v. Indiana, 191. U. S. v. Salomon, 46 Ill. 333; Brandenstein v. Hoke, 101 Cal. 138, text 148, 24 Sup. Ct. Rep. 61; People *ex rel.* Miner 131, 35 Pac. Rep. 562; 12 Ency. Pl. & Pr. 728; 19 Am. & Eng. Ency. Law (2nd Ed.) 764; McDermont v. Dinnie, 6 N. Dak, 278, 69 N. W. Rep. 294; McCants v. Layfield, 149 Ga. 231, 99 S. E. Rep. 877; State *ex rel.* Ridgell v. Hall, 99 Neb. 95; Stockman v. Leddy, 55 Colo. 24, 129 Pac. Rep. 220; Ann. Cas. 1915C, 465. As to mandamus against the Governor to perform administrative duties, see State *ex rel.* Bisbee v. Drew, 17 Fla. 67; Huidekoper v. Hadley, 100 C. C. A. 395, 177 Fed. Rep. 1, 40 L. R. A. (N. S.) 505; People *ex rel.* Sutherland v. Governor, 29 Mich. 320; People *ex rel.* Broderick v. Morton, 156 N. Y. 136, 50 N. E. Rep. 791, 41 L. R. A. 231; People *ex rel.* Bruce v. Dunne, 258 Ill. 441, 101 N. E. Rep. 560, 45 L. R. A. (N. S.) 500; 18 R. C. L. 199; 26 Cyc. 228; 6 Am. & Eng. Ency. Law (2nd Ed.) 1015; 6 R. C. L. 151. In State *ex rel.* Kittel v. Jennings, 47 Fla. 307, 35 South. Rep. 986, the decision was in favor of the Governor and others as Trustees of the Internal Improvement Fund in a mandamus case.   See also Camp v. Jennings, 44 Fla. 533; 83 Fla. 344.

The duties prescribed by Chapter 8584 are public executive or administrative functions involving discretion and are not those "of a mere trustee of a fund or property, or a director or corporator in the execution of a franchise or other private duty." State *ex rel.* Bisbee v. Drew, 17 Fla. 67, text 84; 6 R. C. L. 151; 7 R. C. L. 1048; 12 R. C. L. 1001-1008; 18 R. C. L. 196; 19 Stand. Ency. Proc. 174.

Three cases are relied on in the main opinion, *viz*: State *ex rel.* New Orleans Canal & Banking Co. v. Heard, 47 La. Ann. 1679, 18 South. Rep. 746; People *ex rel.* Attorney General v. Salomon, 54 Ill. 39, and County Commissioners of Franklin County v. State *ex rel.* Patton, 24 Fla. 55, 3 South. Rep. 471, citing Jones v. Black, 48 Ala. 540. The Florida and other cases are not in accord with State *ex rel.* New Orleans Canal & Banking Co. v. Heard, 47 La. Ann. 1679, 18 South. Rep. 746. In People *ex rel.* Attorney General v. Salomon, 54 Ill. 39, the proceeding was for contempt in not obeying a peremptory writ of mandamus issued against a purely ministerial officer whose duty was merely ministerial and incidental and who had no responsibility that could be affected by the statute asserted to be unconstitutional; so it is in the class with County Commissioners of Franklin County v. State *ex rel.* Patton, 24 Fla. 55, 3 South. Rep. 471, and is not authority in this case. State *ex rel.* Russell v. Barnes, 25 Fla. 75, text 85, 5 South. Rep. 698. See McGann v. People *ex rel.* Coffeen, 194 Ill. 526, text 549, 62 N. E. Rep. 941. See also Commonwealth v. James, 133 Pa. St. 480, 19 Atl. Rep. 960; Threadgill v. Cross, 26 Okla. 403, 109 Pac. Rep. 558. In Jones v. Black, 48 Ala. 540, the *relators* who were citizen electors who were "mere volunteers" asserted the unconstitutionality of the statute.

"The Constitution, contemplating the grant of limited powers, and distributing them among various functionaries—and the State governments, with their functionaries, being also clothed with limited powers, subordinate to those granted to the general government—whenever any question arises as to the exercise of any power by any of these functionaries under the state or federal government, it is of necessity that such functionaries must, in the first instance, decide upon the constitutionality of the exercise of such power.  It may arise in the course of the discharge of the functions of any one, or of all, of the great departments of government, the executive, the legislative, and the judicial.  The officers of each of these departments are equally bound by their oaths of office to support the Constitution of the United States, and are therefore conscientiously bound to abstain from all acts which are inconsistent with it.  Whenever, therefore, they are required to act in a case not hitherto settled by any proper authority, these functionaries must, in the first instance, decide each for himself whether, consistently with the Constitution, the act can be done." 1 Story on the Constitution (5th Ed.) pp. 273-274.

A public official, whose duties are merely of a ministerial nature, and are so subordinate in character that no injury *or responsibility* can possibly result to him by complying with the terms of a statute the constitutionality of which is questionable, or whose duties are merely ministerial and incidental to the main purposes of the statute, and no violation of duty can be imputed to him by reason of his obedience to the statute, may not be entitled to raise the question of the unconstitutionality of the statute.  See County Commissioners of Franklin County v. State *ex rel.* Patton, 24 Fla. 55, 3 South. Rep. 471; People *ex rel.* State Board of Equalization v. Pitcher, 61 Colo. 149, 156

Pac. Rep. 812, Ann. Cas. 1918D 1185; City and County of Denver v. Board of Com.'rs of Adams County, 33 Colo. 1, 77 Pac. Rep. 858; Capito v. Topping, 65 W. Va. 587, 64 S. E. Rep. 845, 22 L. R. A. (N. S.) 1089; State ex rel. Cruse v. Cease, 28 Okla. 271, 114 Pac. Rep. 251; State ex rel. Fooshe v. Burley, 80 S. C. 127, 61 S. E. Rep. 255; Commonwealth v. James, 135 Pa. St. 480, 18 Atl. Rep. 950; Board of Education of City of Ft. Scott v. Davis, 87 Kan. 286, 123 Pac. Rep. 885. But where a public officer acts on his own responsibility and will violate his oath of office to support the constitution and will jeopardize the interests of the State or of the public, or may otherwise render himself liable, as for a breach of duty or for a disregard of responsibility, if he performs some act or refrains from performing some act in compliance with the requirements of the main purpose of a statute supposed to be unconstitutional, he should in justice to himself and in the interest of the State, be entitled to raise the question of the constitutionality of the statute, as a defense to a mandamus proceeding to compel him to perform such act in compliance with the statute. This has been the rule in this State. See State ex rel. Russell v. Barnes, 25 Fla. 75, 5 South. Rep. 698; State ex rel. Willie v. Barnes, 22 Fla. 8; State ex rel. Murphy v. Barnes, 24 Fla. 29, 3 South. Rep. 433; State ex rel, University of Utah v. Candland, 36 Utah 406, 104 Pac. Rep. 285, 140 Am. St. Rep. 834, 24 L. R. A. (N. S.) 1260; Payne v. Staunton, 55 W. Va. 202, 46 S. E. Rep. 297, 2 Ann. Cas. 74; Van Horn v. State, 46 Neb. 62, 64 N. W. Rep. 365, text 372; State ex rel. Davis-Smith Co. v. Clausen, 65 Wash. 156, 117 Pac. Rep. 1101, 37 L. R. A. (N. S.) 464; Woodall v. Darst, 71 W. Va. 350, 77 S. E. Rep. 254, Ann. Cas. 1914B, 1278; 12 C. J. 765; 6 R. C. L. 92; State ex rel. Hubbard v. Holmes, 53 Fla. 226, 44 South. Rep. 179; Threadgill v.

Cross, 26 Okla. 403, 109 Pac. Rep. 558; 52 L. R. A. (N. S.) 415; 23 L. R. A. (N. S.) 1160; 37 L. R. A. (N. S.) 466.

Under the constitution the Governor is vested with "the supreme executive power of the State;" and the Attorney General and State Treasurer are "administrative officers of the executive department." Secs. 17 and 20. Art. IV. See also Sec. 6, Art. IV; State ex rel. Bisbee v. Drew, 17 Fla. 67, 18 R. C. L. 199.

The Governor, State Treasurer and Attorney General are among the highest officers of the executive department of the State government, and their duties are not ministerial. They are by Chapter 8584, Acts of 1921, charged with administrative functions and duties as a State "Board of Equalizers," which duties are not of a subordinate ministerial character to be performed under the authority or direction of other superior officers, but the duties are executive or administrative in their nature of obviously vast import in the State government involving discretion and responsibility of a high order to be exercised by such State officers on their own responsibility and judgment under their oaths of office with direct responsibility to the people of the State. The decided cases in this State, as above cited, authorize such officers to set up the unconstitutionality of a statutory provision in defense to a mandamus to enforce the performance of administrative functions under an enactment averred to be unconstitutional. This is necessary to protect the interests of the State. See State ex rel. Hubbard v. Holmes, 53 Fla. 226, 44 South. Rep. 179; State ex rel. Miller v. Leach, 33 N. Dak. 513, 157 N. W. Rep. 492; 12 C. J. 765. The question may be presented by motion to quash or by answer. Woodall v. Darst, 71 W. Va. 350, 77 S. E. Rep. 264. In many cases unless the

validity of a statute is challenged by an officer, the question cannot be presented to or decided by the courts, and the State suffers in consequence. The respondents are not invoking the Act of 1921, therefore they are not estopped as in Outagamie County v. Zuehlke, 165 Wis. 32, 161 N. W. Rep. 6, and similar cases. Compare 124 Md. 502, 92 Atl. 1066; 12 C. J. p. 770, sec, 193; 8 Cyc. 792.

Mandamus lies only when there is no other adequate remedy and the relator has a clear legal right to enforce and the respondent has a clear legal duty, not involving discretion, to perform the act or function to be commanded by the writ. State *ex rel.* Ellis v. Atlantic Coast Line R. Co., 53 Fla. 650, 44 South. Rep. 213; McGann v. People *ex rel.* Coffeen, 194 Ill. 526, 62 N. E. Rep. 941; Throop on Public Officers, sec. 815.

If the statutory provision prescribing the act or function that is here sought. to be enforced manifestly. is or reasonably may be violative of organic law, neither the right of the relator to have the act performed nor the duty of the respondents to perform the act or function is clear. McGann v. People *ex rel.* Coffeen, 194 Ill. 526, text 549, 62 N. E. Rep. 941. The Governor and Attorney General, under their constitutional oaths of office, should see that the valid statutes of the State are executed. They cannot be required to execute an unconstitutional statute; therefore it is their duty to test the validity of statutes when they consider them invalid.

If the statutory provision is unconstitutional, the voluntary performance or the judicial enforcement of the prescribed. act or function would be unauthorized if not illegal. An unconstitutional statutory provision is a legislative enactment that is forbidden by the constitution. It is not a law and the courts will not enforce it. If the en-,

actment is unconstitutional, it is void *ab initio,* and should not be executed by State officers or enforced by the courts.

Mandamus cannot legally be invoked to enforce the performance of an unauthorized or an illegal act or function. State *ex rel.* Walker v. Stewart, 49 Fla. 259, 38 South. Rep. 600; State *ex rel.* Edwards v. County Commissioners of Sumter Co., 22 Fla. 1; State *ex rel.* Norman v. D'Alemberte, 30 Fla. 545, 11 South. Rep. 905; McKinnon v. State *ex rel.* Davis, 70 Fla. 561, 70 South. Rep. 557; McDermott v. Dinnie, 6 N. Dak. 278, 69 N. W. Rep. 294; State *ex rel.* Bloxham v. Gibbs, 13 Fla. 55. Nor to enforce a doubtful right. Tampa Water Works Co. v. State *ex rel.* City of Tampa, 77 Fla. 705, 82 South. Rep. 230; McGann v. People *ex rel.* Coffeen, 194 Ill. 526, text 549, 62 N. E. Rep. 941.

The following quotation indicates that in the Federal Supreme Court the interest must be personal and not official: ''The power of a public officer to question the constitutionality of a statute as an excuse for refusing to enforce it has often been assumed, and sometimes directly decided, to exist. In any event, it is a purely local question, and seems to have been so treated by this court in Huntington v. Worthen, 120 U. S. 97, 101. Different considerations, however, apply to the jurisdiction of this court, which we have recently held can only be invoked by a party having a personal interest in the litigation. It follows that he cannot sue out a writ of error in behalf of third persons.'' Smith v. Indiana, 191 U. S. 138, text 148, 24 Sup. Ct. Rep. 51; Governor of State of Indiana v. Dye, 231 U. S. 250, 34 Sup. Ct. Rep. 92; 18 R. C. L. 113; Braxton County Court v. State of West Virginia *ex rel.* State Tax Commissioners, 208 U. S. 192, 28 Sup. Ct. Rep. 275.

As the constitutional validity of sections 6 and 7 of Chapter 8584, Acts of 1921, is not discussed in the majority opinion, it will not be discussed here.

WEST, J., concurs.

WHITFIELD, J., dissenting from the order denying a rehearing.

The return to the alternative writ signed by the Governor, the Attorney General and the State Treasurer, in effect avers that the assessment of the railroad property referred to was not made by the State Comptroller under section 6, Chapter 8584, Acts of 1921, as alleged in the alternative writ, for the reason that said section 6 of Chapter 8584 violates section 16, Art. 3 of the Constitution of Florida, and is therefore void; and it is averred that the assessment was made as required by section 747 Revised General Statutes, 1920, by the State Comptroller, the Attorney General and the State Treasurer, and that section 7, Chapter 8584, which the writ seeks to enforce, is inoperative because it is applicable only to assessments made pursuant to section 6, Chapter 8584 that respondents consider to be violative of the constitution, leaving section 747 Revised General Statutes the controlling law on the subject. The respondents have not adjudged the statutory provisions to be unconstitutional, but since they consider them unconstitutional, they have acted accordingly and submit the matter to the court for decision.

The court refuses to determine the question presented as to the constitutionality of the statutory provision, and orders a peremptory writ to compel a performance of the function prescribed by section 7, Chapter 8584, upon the theory that it is a mere ministerial duty to be performed

by ministerial officers who have no right to question the constitutionality. of the statutory provisions referred to, though such provisions purport to prescribe duties for said officers that are here sought to be enforced to effectuate the main purpose of the enactment.

Under the express provisions of the constitution the Governor, the Attorney General and the State Treasurer are not ministerial officers, but are executive officers. Secs. 1, 6, 12, 17, 20, 22, 24, 27, 28, Art. IV Constitution of Florida; Article II Constitution of Florida.

"A ministerial act is one which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority without regard to the exercise of his own judgment upon the propriety of the act being done." American Casualty Insurance & Security Co. v. Fyler, 60 Conn. 448, 22 Atl. Rep. 494, 25 Am. St. Rep. 337; Galey v. Board of Com'rs of Montgomery County, 174 Ind. 181, 91 N. E. Rep. 593; 29 Mich. 320.

The powers and duties purported to be conferred upon the Governor, the Attorney General and the State Treasurer by section 7, Chapter 8584, as to assessments of railroad property are similar to those stated in section 5 of the act to finally decide matters of valuation in equalizing tax assessments "between counties" as to other property in the several counties of the State.

Manifestly the duties referred to in Section 7 are not ministerial in their nature, but are governmental, executive or administrative functions involving power and discretion of vast importance to the State and to all tax payers of the State as well as to the relator. See Secs. 1, 2 and 3, Art. IX; Sec 16, Art. XVI, of the Florida Constitution. In the execution of their statutory duties and powers,

executive officers are bound to take notice of the mandates of the constitution, which their oaths of office require them to "support, protect and defend." Sec. 2, Art. XVI; Sec. 16, Art. III, State Constitution; Marbury v. Madison, 1 Cranch 137, text 180; State *ex rel.* v. Barnes, 25 Fla. 75.

If executive officers regard a statutory provision prescribing their duties as violative of the constitution, it is their sworn duty to give effect to the constitution. State *ex rel.* Russell v. Barnes, 25 Fla. 75, 86; Marbury v. Madison, 1 Cranch (U. S.) 137; Bates v. Taylor, 87 Tenn. 319, 11 S. W. Rep. 266, 3 L. R. A. 316.

When the constitutionality of an enactment is duly determined by the courts, it becomes the duty of all officers to give it due effect. 18 R. C. L. 108. But until it is so determined, executive officers interpret the constitutional and statutory enactments under the advice of the Attorney General in so far as their powers and duties are thereby affected. See Secs. 6 and 22, Art. IV; 12 C. J. 698. An invalid provision in a statute should not be enforced. 70 Fla. 340. A decision as to whether Sections 6 and 7, Chapter 8584, are constitutionally operative is obviously essential to a proper disposition of this case. The question is squarely presented by executive officers of the State whose duties are affected by the sections, and a decision is requested by both parties in the interest of orderly governmental procedure of vast importance to the public. The courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." Cohens v. Virginia, 6 Wheat. 264, text 404.

If the courts will not determine the constitutionality of a statutory provision when the question is presented by the governor and other executive officers in proceedings brought against such officers to enforce the enactment,

those officials are left to determine the matter for themselves as it affects their duties, until a judicial determination can be obtained. Courts should not attempt to compel the Governor and other State Executive officers to perform an act that may violate their oaths of office.

Certainly in such a case there is not a clear legal duty to perform and a clear legal right to require performance that may be enforced by mandamus against the Governor, the Attorney General and the Treasurer of the State.

The oaths of office of the executive officers of the State are as binding as are the oaths of office taken by the members of the judiciary.

The pleadings show that by concurring in the valuation put upon the railroad property by the Comptroller, the Attorney General and State Treasurer have already reviewed and approved the assessment in controversy; and the courts have no power to compel the Governor to exercise his judgment in the premises.

"The courts have no power to control the action of the Governor in the discharge of any duty pertaining to his office under the laws of the State. The person of the Governor is subject to the process of the courts only in reference to private acts, and acts not pertaining to executive functions imposed by the Constitution or laws." State of Florida *ex rel.* Bisbee, Jr. v. Drew, Governor, 17 Fla. 67.

"The Governor of the State of Florida cannot be commanded by the courts to perform any act which may be required of him by a law of the State relating to the executive office, or any duty which he may be required to perform of a political nature, even though private rights may be involved." State of Florida *ex rel.* Bisbee, Jr. v. Drew, Governor, 17 Fla. 67, text pages 83 and 84; 12 R. C. L.

p 1008, sec. 10; 18 R. C. L. 196; 23 L. R. A. 194; 45 L. R. A. (N. S.) 500; 3 L. R. A. 316; 11 L. R. R. 763; 4 L. R. A. 231.

The voluntary appearance of the Governor does not authorize the issuance of a peremptory writ of mandamus to compel him to perform a public governmental act · involving executive or administrative power and discretion, even if the writ may in this case properly be issued against the Attorney General and the State Treasurer. State *ex rel.* Robb v. Stone, 120 Mo. 428, 25 S. W. Rep. 376, 23 L. R. A. 194, text 198; 18 R. C. L. 198 *et seq.* and notes; 29 Mich. 320.

In this case a peremptory writ is ordered to be issued to command the Governor, Attorney General and State Treasurer to perform an administrative function of a highly discretionary nature, when the court refuses to determine the validity of the statutory provision upon which the writ is predicated, though by the pleadings in the case the Governor, Attorney General and State Treasurer on their official responsibility aver the enactment to be violative of a specified provision of the State constitution, to which constitution judicial as well as executive officers of the State are subject, all having taken an oath to obey it. The writ in effect will command the Chief Executive of the State and two officers of the executive department of the State to execute an enactment whether it be valid or void. No authority for the exercise of this power by the courts is adduced.

WEST, J., concurs.